**H. J. LANEY (Petitioner Below) v. J. ROSCOE HOLBROOK, Chairman, et al., members of and constituting the Board of Public Instruction of Orange County, Florida, etc., et al. (Respondents Below).**

8 So. (2nd) 465                              Division A
May 26, 1942                    Rehearing Denied June 22, 1942

G. P. Garrett, for appellant.

G. B. Fishback, for appellees.

BUFORD, J.:

On writ of error we review judgment of the Circuit Court of Orange County, Florida, entered on review by certiorari of an order of the County Board of Public Instruction of Orange County, Florida.

On charges prepared under the provisions of Chapter 18743, Special Acts of 1937, the County Board of Public Instruction held a hearing, received evidence and entered its judgment ousting plaintiff in error from his position as Principal of the Public Schools in the City of Apopka in Orange County.

Sections 4, 5 and 6 of the involved legislative Acts provide:

"Section 4.   Causes for the discharge or the demotion of a teacher shall be: ·

"(a)  Immoral character or conduct, insubordination, physical or mental incapacity to perform the duties of his employment.

"(b)  Incompetency which shall include notable failure of such teacher to make professional advancement.

"(c)  Persistent violation of or willful refusal to obey the laws of the State of Florida or rules and regulations adopted by authority of law relating to the public schools, the public school system or teachers thereof.

"(d)  Excessive or unreasonable absence from the performance of duties imposed by the employment, refusal or inexcusable failure to discharge the duties of such employment.

"(e)  Repeated or continued illness interfering with the prompt and efficient discharge of the duties of said employment or illness resulting from any incurable or contagious disease which might render the continuance of such teacher in his or her employment dangerous to the health or well being of those brought in contact with said teacher by reason of said employment.

"(f)  Dishonesty while employed, conviction of a felony, repeated convictions of a misdemeanor or the conviction of any offense involving moral turpitude.

"(g)  Indulgence of such teacher in the use of intoxicating liquor or drugs. ·

"Section 5.  Before any teacher shall be discharged from his or her employment after the completion of such probationary period of employment charges in

writing specifying one or more of the causes enumer-
ated in Section 4 of this Act shall be preferred by a
majority of the Trustees of the School District in
which said teacher is employed or by the County
Superintendent of Pubic Instruction of the County in
which said teacher is then employed, and such charges
shall be filed with the Board of Public Instruction of
said County and a copy thereof shall be delivered or
mailed to such teacher at his or her last post office
address with a notice of the time and place when a
hearing upon such charge or charges will be held by
the County Board of Public Instruction of said County,
which notice shall be given or mailed to such teacher
no less than ten (10) days prior to such hearing. At
the time and place specified in such notice, the County
Board of Public Instruction shall conduct a public
hearing on such charge or charges, at which hearing
there shall be first presented the evidence in support
of such charge or charges, and thereafter the evidence
on behalf of such teacher with respect thereto. At
such hearing the teacher shall have a right to be
heard and represented by counsel. Only evidence
under oath or affirmation shall be received at such
hearing. Full cross examination of all witnesses
shall be permitted and the hearing shall be confined
to the written charges served upon the teacher. A
finding by a majority vote of the County Board of
Public Instruction that any one or more of the charges
made against such teacher have been established or
sustained shall be necessary before any teacher may
be discharged or demoted and without such finding
the charge or charges preferred against said teacher
shall be ordered dismissed by the said County Board.
The said Board shall deliver a copy of its findings

upon said charge or charges to the teacher within five (5) days after the same have been made. It shall be the duty of the Board of Public Instruction upon request made by any teacher before any hearing is had upon charges filed against such teacher to cause to be made and filed in the office of said Board a true and correct record of all the proceedings had at said hearing including a transcript of the testimony and other evidence taken or produced at said hearing, provided that said teacher shall first deposit with the Board of Public Instruction a cash deposit, bond or other security acceptable to said Board to insure and guarantee payment by the teacher of all costs incurred in connection with the preparation of the record of said proceedings.

"Section 6. If, upon the hearing provided for in this Act, there shall be a finding that any one or more of the charges made against such teacher have been established, the decision rendered by said Board upon such findings may be reviewed upon Certiorari by the Circuit Court of the County in which such teacher is employed or was last employed or such decision may be reviewed in the Circuit Court by any other appropriate proceedings allowed by law. No such writ of certiorari shall be issued or other proceedings for review had unless applied for within thirty (30) days after the findings and decision of the Board of Public Instruction shall have been served upon such teacher as hereinbefore provided."

The charges preferred against the School Principal, H. J. Laney, were seven in number and were as follows:

"First: That H. J. Laney on or about the 13th of January, 1941, in Orange County, Florida, indulged in the use of intoxicating liquors.

"Second: That during the School Term from September to December, 1940, that the said H. J. Laney indulged in the use of intoxicating liquors and on divers occasions during the said period of time came to the highschool and the elementary school in Apopka during school hours and during such indulgence.

"Third. That during the school term from January to June, 1941, that the said H. J. Laney indulged in the use of intoxicating liquors and on divers occasions during the said period of time came to the highschool and the elementary school in Apopka during school hours and during such indulgence.

"Fourth: That during the month of February, 1937, in Apopka, Florida, the said H. J. Laney at the Drug Store approached one Dorothy Damsell, a student at the school in Apopka, and told the said girl that she had lovely limbs, and then and there attempted by flattery to seduce the said girl.

"Fifth: That about the month of March, 1937, the said H. J. Laney arranged with the said Dorothy Damsell that she should type his thesis for his Master's Degree for him, and that in return therefor that he would give her special tutoring so as to enable her to graduate from the highschool in June of 1937, and that said Dorothy Damsell set about the business of doing the said work, and that the said H. J. Laney while working with her on his said thesis dictated and stated certain lude and immoral things to the said girl, and dictated a chapter on the subject of Sex Life of the Residents of Slavia, and thereafter attempted

to make love to the said girl, and sought to seduce her and told the said child and student that it was normal and proper that persons enter into sexual relations and urged the said girl to enter into such relations with him, and so the said Trustees charge that the said H. J. Laney was then and there guilty of immorality; and that the last of the said attempts at seduction of the said Dorothy Damsell occurred about the 30th of May, 1937, at the elementary school building in Apopka, Florida.

"Sixth: That on or about December 24, 1940, in Orange County, Florida, the said H. J. Laney indulged in the use of intoxicating liquors and became drunk and then and there attempted to seduce one Katherine Hogshead, and when the said Katherine Hogshead resisted his advances told her that she was 'too dam pure for him to waste his time trying to get her a job with National Youth Administration.'

"Seventh: That about the month of November, 1940, in Orange County, Florida, the said H. J. Laney approached one Mallory Welch and solicited the said Welch to approach the Sheriff of Orange County, Florida, and find out for him, the said Laney, whether or not the said Sheriff would permit the said H. J. Laney to sell bolita tickets at a Drug Store on West Church Street in Orlando in which the said H. J. Laney was interested, and they say that the sale of bolita tickets is immoral and unlawful and that the conduct of the said H. J. Laney in attempting to be permitted to violate the laws on this subject were immoral."

There were no findings of specific facts by the County Board of Public Instruction as to any of the charges, supra, but an Order was entered, as follows:

"July 25, 1941

"Trustees Special Tax School
District Number 3 of Orange
County, Florida

vs.

H. J. Laney,
Principal of the Apopka Public Schools.
    Findings of the Board of
    Public Instruction of
    Orange County, Florida.

"The Board of Public Instruction of the County of Orange, State of Florida, having heard the evidence in the above mentioned case, find H. J. Laney guilty as charged in each and every of the charges filed by the Apopka Special Tax School District Trustees under the provisions of Chapter 18743 of the Laws of Florida, and hereby discharge him from his employment as principal of the Apopka Schools and as teacher in the Orange County Public School System.

"Done and Ordered at Orlando, Florida, this July 25, A. D. 1941.

Signed: J. R. Holbrook, Chairman
Julian E. Sadler
Ira J. Johnston
Board of Public Instruction for
Orange County, Florida."

It is elementary that the right to continue as Principal of the Public Schools held by plaintiff-in-error at the time the charges were filed and at the time of the entry of the order, supra, was a valuable property right, of which he could not be legally deprived without due process of law.

When we consider the general nature of the language in which the charges were couched and the conclusions rather than specific statements of facts upon which such conclusions might be based, and when we also consider the remoteness of the dates alleged in some of the charges it becomes readily apparent that the general "verdict of guilty" was not sufficient to constitute findings of facts as required by the statute and, therefore, fell short of due process of law.

Let us take Charge "First" and assume that the evidence showed that on January 13th 1941, H. J. Laney had taken a drink of wine, or a bottle of beer, or even a high-ball in the privacy of his room, and that such conduct on his part was the only support found for the charge. Certainly, no court would be justified in holding that such showing of fact was sufficient under the provisions of sub-paragraph (g) of Section 4 of the Act, supra, to warrant the forfeiture of the position of Principal of the Public Schools. Therefore, to constitute due process of law, it became and was necessary for the County Board of Public Instruction to make a finding of fact, that is to set out facts which they found from the evidence to be shown to be true as to each of the charges, so that a court authorized to review the matter on certiorari could determine, first, whether or not the facts as found by the Board constituted lawful grounds for the removal of the Principal and, having determined this question in the affirmative, to then determine whether or not the evidence supported the finding. Without this, the reviewing court would be compelled to grope in the dark and to resort to guess-work as

to what facts the Board had found to be true and what facts alleged were not found to be true.

Allegations, proof and findings as to the dates of occurrence of any alleged cause for discharge are vitally material because Sections 2 and 3 of the Act provide:

'Section 2. During the probationary period of employment, any contract of employment with any teacher may or may not be renewed at the discretion of the County Board of Public Instruction of said County and during such probationary period any teacher may be transferred from one school within said County to another at the discretion of said Board of Public Instruction and may during said period dismiss, discharge or demote any teacher for any cause which said Board of Public Instruction deems necessary for the best interests of the schools of said County or the school wherein said teacher may then be serving or said Board of Public Instruction may dismiss, discharge or demote any such teacher for one or more of the causes enumerated in Section 4 of this Act in which case it shall not be necessary for said Board of Public Instruction to follow the procedure outlined in Section 5 of this Act, but may satisfy itself as to the existence or non-existence of one or more of said causes in any manner which said Board may see fit to adopt and such action taken with respect thereto or conclusion reached thereby shall be final and shall not be subject to appeal or review by any Court or other body in this State.

"Section 3. After the completion of a probationary period of employment without discharge, whether such period shall have been completed before or shall be completed subsequent to the enactment of this law,

such teachers as have completed such probationary period of employment shall be reappointed at the end of each school year and shall continue in the service in which' they are then employed during their good behavior and as long as they render efficient and competent service without reduction in their salary or compensation except as hereinafter provided and no such teacher shall be dismissed, discharged or demoted except for one or more of the causes specified in Section 4 of this Act and then only after due notice of the charge or charges brought against such teacher, a hearing, and a finding of the existence of one or more of the causes mentioned in Section 4 hereof. No teacher shall lose his or her rights conferred by this Section on account of any leave of absence granted to such teacher in writing by the County Board of Public Instruction of said County or by the County Superintendent thereof."

It appears, therefore, that any cause for discharge must be alleged, proved and found to have occurred after the end of the probationary period of service of the involved teacher. This is true because by serving the probationary period as provided in the Act, the teacher acquires a status as of the end of that period and he starts from then with the right fixed by statute to continue in the tenure of his position as a teacher unless and until he forfeits the same in some manner contemplated by the statute.

In the case of Beaumont Sour Lake & Western Ry. Co. v. United States, 182 U. S. 74, 86, 75 L. Ed. 221, 51 S. Ct. Reports 1, the Supreme Court of the United States was dealing with findings of the Interstate Commerce Commission and considering the Commission as a quasi judicial body empowered to make

findings and rules having the force and effect of law, and said:

"Complete statements by the Commission showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions in cases analogous to this. Wichita R. & Light Co. v. Public Utilities Commission, 260 U. S. 48, 58, 67 L. Ed. 124, 130, 43 S. Ct. 51. And we have recently emphasized the duty of such courts fully to state the grounds upon which they act. Virginia R. Co. v. United States, 272 U. S. 658, 675, 71 L. Ed. 463, 472, 47 S. Ct. 222; Lawrence v. St. Louis-Francisco R. Co., 274 U. S. 588, 591, 592, 71 L. Ed. 1219, 1222, 1223, 47 S. Ct. 720; Arkansas R. Commission v. Chicago, R. I. & P. R. Co. 274 U. S. 597, 603, 71 L. Ed. 1224, 1228, 47 S. Ct. 724; Hammond v. Schappi Bus Line 275 U. S. 164, 171, 72 L. Ed. 218, 221, 48 S. Ct. 66; Cleveland C. C. & St. L. R. Co. v. United States, 275, U S. 404, 414, 72 L. Ed. 338, 344, 48 S. Ct. 189; Baltimore & O. R. Co. v. United States, 279 U. S. 781, 787, 73 L. Ed. 954, 957, 49 S. Ct. 492. And the Commission is not excused by the fact that the carriers presented evidence on a group basis or by the omission of the southwestern lines in the petition for a rehearing to object to the use of averages. The proceedings before the Commission were for the determination of what divisions are and for the future will be reasonable."

And again in Florida v. United States, 282 U. S. 194, 208 to 212, 75 L. Ed. 291, in considering a like matter, the Court said:

"We agree with the conclusion of the District Court that, on the facts that have been found by the Com-

mission, the order with respect to intrastate rates in its statewide application cannot be sustained by reason of a proper determination of undue prejudice 'as between persons or localities in intrastate commerce on the one hand and interstate— . . . commerce on the other hand.' Interstate Commerce Act No. 13 (4). The limitation of the Commission's finding as to interstate rates, and of the order prescribing them, to transportation from points in the northern part of Florida to points in Georgia, defined the interstate commerce which was deemed to be concerned. All of this commerce was potential, no actual movement from Florida to Georgia having been shown. It would be an extreme and unwarranted assumption that to protect this interstate commerce from unjust discrimination as between persons or localities, it was necessary to alter the existing rates for the transportation of logs between all points whatever within Florida. Such a conclusion would not only require evidence to support it but findings of appropriate definiteness to express it. Illinois C. R. C. v. State Pub. Utilities Commission, 245 U. S. 493, 507, 508, 62 L. Ed. 425, 437, 438, P. U. R. 1918C, 279, 38 S. Ct. 170; Railroad Commission v. Chicago B. & Q. R. Co., 257 U. S. 563, 579, 580, 66 L. Ed. 371, 379, 380, 22 A.L.R. 1086, 42 S. Ct. 232; New York v. United States, 257 U. S. 591, 600, 66 L. Ed. 385, 390, 42 S. Ct. 239."

In the state of the record in which it appeared in the Circuit Court the judgment, if it could be called a judgment, or Order of the County Board of Public Instruction should have been quashed and the cause remanded to the Board with instructions to make findings of fact with sufficient definiteness to advise the accused as to what facts the Board found suffi-

ciently proven to substantiate charges which would warrant the forfeiture of his position as Principal of the Public Schools of the City of Apopka in Orange County, Florida.

Having reached this conclusion, it would be improper for us at this time to express any opinion as to the sufficiency of the evidence to support any of the charges or to express any opinion as to whether or not the charges, if found to be based on fact, are sufficient to warrant the expulsion of the plaintiff-in-error as Principal of the Public Schools, supra.

For the reasons stated, the judgment is reversed with directions that a judgment be entered in Circuit Court not inconsistent with the views herein expressed.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, JJ., concur.