128 So.2d 881 (1961)
Larry Nash BOYD, Petitioner,
v.
FLORIDA MATTRESS FACTORY, INC. and Standard Accident Insurance Company, Respondents.
No. 30836.
Supreme Court of Florida.
April 12, 1961.
Rehearing Denied May 9, 1961.
John P. Corcoran, Jr., of Corcoran & Henson, Tampa, for petitioner.
David G. Hanlon, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
DREW, Justice.
Petitioner Larry Nash Boyd seeks to have reviewed an order of the Florida Industrial Commission, dated September 16, 1960, affirming an order of the deputy commissioner denying his claim for medical expense, compensation and attorney's fees. The full commission in concise terms analyzed the profound findings of the deputy commissioner by stating:
"This cause came on to be heard upon application of the claimant for review of an Order of the Deputy Commissioner dated February 17, 1960, denying and dismissing a claim for workmen's compensation benefits on the ground that claimant was injured as a result of horseplay which he himself initiated, and by his initiation of said horseplay he voluntarily deviated from his employment."
Our position is clear:
"This Court upon review of a final order of the Full Commission has the duty of determining whether the Commission properly fulfilled its function with reference to the evidence to support the findings and the law applied to the findings * * *."[1]
The full commission having affirmed the order of the deputy commissioner on authority of United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741, it specifically stated the order accorded with the essential requirements of the law. This ruling does not reach us with a presumption of correctness and is to be tested by us in this judicial review.
*882 While the basic facts of an objective nature are not in dispute, the subjective elements from which the facts arise were subject to contradiction in certain respects. At the hearing the claimant testified that at the time of his accident and injury on March 4, 1959, he was an employee and officer of the respondent corporation. The corporation owned a pleasure boat which was used to entertain customers and suppliers of the corporation. On the day of the accident, the claimant had entertained a supplier and creditor by taking him fishing. The supplier's representative, Park, had been insistent they go out in the boat, and in order to maintain good business relations the claimant and Park went out but with not much success. They returned to the dock where the boat was docked. While docked, claimant was transferring some equipment from an old storage bag to a new one when he found some cherry bomb firecrackers. These were used for the purpose of catching minnows, and have a waterproof fuse allowing for an underwater explosion. Claimant lit the bomb and threw it under the dock stating as his reason:
"* * * It was an unconscious, automatic act. You have no rhyme or reason for doing it, you don't know why you do it, or anything else. It was just one of those things that you do automatically and unconsciously."
The explosion of the bomb gave rise to immediate total loss of vision of the left eye. There was some degree of levity according to witnesses at the time of the accident and the findings of the deputy so reflect the testimony to that effect on the part of said witnesses.
The deputy found that until the exact moment the claimant began to light and throw the cherry bomb, claimant was in the course of his employment. At that specific moment, there was a deviation from the employment as a result of which the accident and injury occurred.
These facts present a case of first impression in this State. Larson in his treatise on Workmen's Compensation discusses one among several approaches which consider "horseplay" as entitled to be judged according to the same standards of extent and duration of deviation that are accepted in other fields so that if an insubstantial deviation arises which does not necessitate the complete abandonment of the employment and the concentration of all energies for a substantial part of the working time, the incident remains a simple human diversion.[2] Larson, outlining another theory, the "method" approach, where the horseplay takes the form of a "whimsical" method of performing the duties of employment, states there is a respectable body of law supporting the general idea that the act remains within the course of employment. The playfulness, according to Larson, should be no more material in the compensation scheme than negligence, thoughtlessness, ineptitude and foolishness in method.
Cases from other jurisdictions on similar facts are quite revealing. In Pedersen v. Nelson, 1944, 267 App.Div. 843, 45 N.Y.S.2d 784, the Court on appeal from an award of the Industrial Board, allowed recovery to claimant who was a handyman, janitor and carpenter. While working in a house he saw and lighted a firecracker and was injured. The Court ruled he was entitled to an award.
In Miles v. Gibbs & Hills, Inc., 250 N.Y. 590, 166 N.E. 335, claimant while walking along a railroad track in the normal course of his employment, struck a torpedo on the track with a hammer. The explosion caused a piece of metal to enter his left eye which resulted in its removal. The award was opposed on the ground that the accident did not arise out of and in the course of the claimant's employment. The Court affirmed the award of the State Industrial *883 Board ruling that the accident arose out of the employment.
In Franck v. Allen, 270 App.Div. 960, 61 N.Y.S.2d 728, a farmhand, sweeping the floor of the cowbarn discovered a dynamite cap. He inserted a nail in the cap with the result that the powder exploded causing injuries. The Court affirmed the Board award that the claimant's injuries arose out of and in the course of his employment.
In another case, Jordan v. Dixie Chevrolet, 1950, 218 S.C. 73, 61 S.E.2d 654, the Court supported the view that a slight deviation caused by curiosity or other natural human act is not necessarily a bar to compensation. In this case, while sitting in the front seat of a car in the garage claimant took a tear gas bomb from the glove compartment. He pulled the cotter pin releasing the contents of the bomb which resulted in its explosion and resultant eye injury. The Court affirmed the award.
Our review here is confined to the determination of whether the wrong conclusion of law was drawn from the evidence submitted to the deputy. The material facts are brought out by the deputy commissioner and we are not compelled "to grope in the dark and to resort to guess-work as to what facts [were] found to be true and what facts alleged were not found to be true."[3]
The right to compensation turns on the question of deviation solely, and to say that the claimant, by this trifling act when taken in conjunction with all other acts constituting the conviviality required in this enforced fishing trip, deliberately and substantially stepped outside of his employment is without basis in logic or reason.[4]
Larson states on this point:
"* * * One gets the impression that horseplay, however trivial or innocent, is regarded with such revulsion by the courts that the most infinitesimal trace of it will be deemed sufficient to transport any employee immediately and decisively outside the boundaries of his employment. The foolish prank which is over in a fraction of a second  the loud bang, the thrown object, the turned-off faucet  has been here used to deny compensation in blindness and death cases, although the interruption of or interference with the service was virtually zero. It is submitted that Judge Desmond's appraisal of such incidents as `insignificant antics,' not to be magnified into a constructive abandonment of the employment, is the only interpretation of the Act which is consistent with the law of insubstantial deviations in other fields."[5]
The petition for writ of certiorari is granted and the order of the full commission is quashed and this cause remanded to the full commission with directions to remand to the deputy commissioner for preparation of an order not inconsistent with the above opinion.
It is so ordered.
THOMAS, C.J., and ROBERTS and O'CONNELL, JJ., concur.
THORNAL, J., dissents.
THORNAL, Justice (dissenting).
I cannot agree that the rather puerile diversion of frightening people with "cherry *884 bombs" can be catalogued as a contribution to the advancement of this employer's business so as to bring the activity within the scope of the claimant's employment. I therefore respectfully dissent.
NOTES
[1] Hardy v. City of Tarpon Springs, Fla. 1955, 81 So.2d 503, 505.
[2] 1 Larson, Workmen's Compensation Law, Suggested Solution: Course of Employment Test, Section 23.60 (1952).
[3] Laney v. Holbrook, 1942, 150 Fla. 622, 8 So.2d 465, 468, 146 A.L.R. 202.
[4] It is interesting to note that in the case of Brannen v. Princeton Farms et al., FIC decision No. 2-737 (certiorari denied without opinion, Fla.App., 106 So.2d 240) the full commission approved an award for death benefits to an employee who, during an enforced period of idleness caused by a rainstorm and putting gas in a truck, was killed when he tapped a 37 millimeter shell, which he found on a shelf on the premises of the employer, against a nearby water pipe.
[5] Larson, supra, Section 23.63.