135 So.2d 423 (1961)
Clifford JULIAN, Petitioner,
v.
PORT EVERGLADES TERMINAL COMPANY, Inc., and the Florida Industrial Commission, Respondents.
PORT EVERGLADES TERMINAL COMPANY, Inc., Bituminous Casualty Corporation and Florida Industrial Commission, Petitioners,
v.
Clifford JULIAN and Florida Industrial Commission, Respondents.
Nos. 31154, 31155.
Supreme Court of Florida.
November 22, 1961.
Rehearing Denied December 14, 1961.
Dan G. Wheeler, Jr., Miami, for Clifford Julian, petitioner-respondent.
Charles Desmond Crowley, Fort Lauderdale, for Port Everglades Terminal Company and Bituminous Casualty Corporation, petitioners-respondents.
Burnis T. Coleman and Paul E. Speh, Tallahassee, for Florida Industrial Commission, respondents.
DREW, Justice.
Petitions for writs of certiorari to review an order of the Florida Industrial Commission were filed by the employer and carrier and the employee. These cases were consolidated. The Florida Industrial Commission reversed the order of the deputy commissioner which had allowed a claim for workmen's compensation benefits. At the same time, the full commission ruled that an order by the deputy commissioner purportedly correcting original order was a nullity because it was promulgated after appeals for review by both the employer and carrier and employee had been filed to take the case before the full commission.[1]
*424 Petitioner Julian contends the full commission made findings of fact contrary to those made by the deputy when it reversed the order of the deputy awarding compensation, while petitioner Port Everglades Terminal Company, Inc. contends the full commission erred in vacating the second order of the deputy commissioner which was entered nineteen days after the original order and approximately sixteen days after application for review was filed to take the case before the full commission.
We will treat the full commission's vacation of the second order initially. The orders were predicated upon the conclusion of the deputy commissioner that the claimant had sustained an injury by accident arising out of and in the course of his employment under the following circumstances. The claimant was an employee for Port Everglades Terminal Company, Inc., whose duties consisted of checking cargo and, in addition, according to the findings of fact of the deputy commissioner, the claimant:
"performed many other duties in and about the warehouse and storage yards of his employer, performing work involving considerable physical activity such as the marshalling, storage and placement, securing, preparing, checking, manually handling, pushing and starting and eventually delivering into the possession and control of the various trucking companies with whom his company did business, of small foreign cars received by his company from seagoing vessels arriving at the terminal, which said foreign cars were ultimately delivered by his employer either directly into the possession of the consignee, or to the consignee through its agent, one of the trucking companies who customarily and usually did business at the aforesaid port. * * *"
On the date of the accident which happened during the regular working hours of the claimant and on the premises customarily and regularly utilized by claimant's employer, Port Everglades Terminal Company, Inc., claimant was called upon to aid an employee of a trucking company which company regularly did business with the claimant's employer, Port Everglades Terminal Company, Inc., and with whom the employer's supervisor testified they were anxious to maintain good will. The employee of the trucking company was loading foreign cars onto a transport truck when one of the foreign cars became derailed. The trucking company employee who knew claimant because of his work association with claimant and claimant's employer, Port Everglades Terminal Company, Inc., called claimant to assist him in replacing the car back on the track of the transport. In so doing, the claimant sustained a compression fracture of the vertebral spine.
The claim was controverted on the ground that the claimant had deviated from his employment to assist another worker who was in no way connected with or working for the claimant's employer and therefore the claimant's injury did not arise out of and in the course of his employment.
The deputy commissioner concluded that the claimant's injury did arise out of and in the course of his employment, finding the claimant's actions were performed in good faith and in the belief he, claimant, was furthering the best interests of his employer.
From the original order of November 16, 1960, the employer applied for a review urging the deputy commissioner erred in finding the accident to have arisen out of and in the course of claimant's employment. Claimant sought review because the attorney's fee awarded was inadequate. On December 5, 1960, subsequent to the application for review, both by the employer and carrier and the claimant, the deputy commissioner entered another order making certain additional findings and increasing the amount of the award for attorney's fee.
The full commission correctly ruled that the order of December 5, 1960 was *425 issued without authority and as such was a nullity and of no effect.[2]
It is, therefore, to the order of November 16, 1960 which we must look for a determination of whether the requirements laid down in U.S. Casualty v. Maryland Casualty, 55 So.2d 741 (Fla. 1951) have been met. In so holding, we dispose of the petition of the employer Port Everglades Terminal Company, Inc. That order of November 16, 1960 (the first order of the deputy) contains findings of fact which succinctly and precisely summarize the facts in the record for review of over 400 pages.
The full commission in its order reversing the order of the deputy commissioner makes three assertions, which individually and collectively violate the principles of review which govern the full commission. The first of these assertions which run contra to the findings of the deputy commissioner follows:
"* * * It is our view that the claimant deviated from his employment contrary to instructions disseminated to all the employees of the employer to the effect that they were not to assist other workmen not employees of the employer. * * *"
The findings of the deputy on this point are:
"* * * There is ample evidence in the record to support a finding and this Deputy does so find that there was an established custom of lending a hand between the Port Authority's employees, the 4 stevedoring companies of which the employer is one, and the various trucking companies hauling for these stevedoring companies. This custom was amply substantiated by Mr. Burns, the employee of Dixie Transport Company, but perhaps most solidly and convincingly of all by the employer's supervisor, Mr. King Graham, who testified both that this helping hand policy had never before existed, and that he felt that it was so urgent that this policy be terminated that he had personally communicated to all of the employees of Port Everglades Terminal Co., Inc. the necessity and specific instructions of not cooperating with or assisting other companies from the date he took over the work as supervisor. In connection with this aspect of Mr. Graham's testimony, it is significant to the Deputy that at the beginning of the hearing carrier's counsel announced that it had no intention of showing that there had ever been any verbal instructions not to assist other companies given to the claimant by any employee or supervisor of the employer. The claimant himself, to the contrary, testified that he had never received any verbal instructions not to assist other companies also working out of the same warehouse but reiterated the testimony of Mr. Burns to the effect that this custom had long been standing." (Emphasis added.)
The second independent finding of the full commission follows:
"* * * in the instant case there has been absolutely no showing, no evidence whatsoever to the effect that the interests of the employer were furthered as the result of the actions of the claimant herein."
*426 The findings of the deputy on this point are:
"While the activity of the claimant in going to the aid of an employee not employed by his employer is certainly a borderline case, it is nevertheless the opinion and finding of this Deputy Commissioner that the employee acted in good faith and in the sincere belief that he was furthering the best interests of his employer by giving the needed lending hand requested of him during his regular working hours and while on the premises utilized by his employer. In this connection, this Deputy is guided by the principle enunciated in Section 27.21, of Larson's Workmen's Compensation to the effect:
"`If the ultimate effect of the claimant's helping others is to advance his own employer's work, by removing obstacles to the work or otherwise, it should not matter whether the immediate beneficiary of the helpful activity is a co-employee, an independent contractor, an employee of another employer, or a complete stranger.' (emphasis supplied)
"Certainly the employer did not refute the testimony of the claimant himself that a shipment of glass was to be moved within the confines of the warehouse itself; that a shipment of paper was intended to occupy its place, that the employer was anticipating momentarily a new shipment of small foreign cars, that the small foreign cars being transported by Dixie Transport Company were occupying a strategic space, the use of which was desired by the claimant, and finally, although solely a matter of opinion, that the remaining foreign cars within the warehouse constituted an obstacle to the performance of his employer's work."
The third independent finding of the full commission is:
"* * * in the instant cause, there is absolutely no evidence to indicate that any emergency existed."
The findings of the deputy commissioner in this respect are to be found in the third paragraph of the above quotation from the deputy commissioner's findings.
It is apodictic in this area of the law that the deputy commissioner is the sole trier of fact and his findings are binding upon the full commission when, as here, they are supported by substantial and competent evidence.[3]
Neither this Court nor the full commission may draw presumptions from the evidence and substitute its judgment for that of the deputy commissioner. In making findings of fact, the full commission has committed error.[4]
The full commission put the question based on its independent finding of fact as follows:
"* * * is the employee covered and is the injury compensable when there has been a departure by the employee from his employment."
Petitioner more accurately has stated the question thusly:
"Does an accident arise out of and in the course of employment where the claimant, acting in the belief that he *427 is removing obstacles to his employers business and engendering good will thereby, sustains injury during regular working hours on the premises of his employer while attempting to assist a third party?"
As our review here is confined to the determination of whether the wrong conclusion of law was drawn by the deputy as the full commission has so indicated, the material facts brought out by the deputy commissioner become paramount. This is not difficult as the guesswork has been eliminated by the findings of fact of the deputy.[5]
Larson,[6] covers the point when he states:
"If the ultimate effect of claimant's helping others is to advance his own employer's work, by removing obstacles to the work or otherwise, it should not matter whether the immediate beneficiary of the helpful activity is a co-employee, an independent contractor, an employee of another employer, or a complete stranger. * * *"
While the activities of this claimant are a far cry from what is commonly known as "horseplay", we have held in another case,[7] on the point of deviation arising out of what was contended to have been "horseplay", that, as Larson states it, "* * * such incidents * * * [are] not to be magnified into a constructive abandonment of the employment, * * *."
The deputy found that there was an established custom of lending a hand between the employer, the four stevedoring companies, and the trucking companies. Such custom testified to by many witnesses taken in conjunction with all the other duties of this claimant leads to but one conclusion consistent with logic and reason, i.e. that there was no deviation.[8]
The petition of the carrier and employer is denied. The petition of the employee, Clifford Julian, is granted and so much of the order of the full commission which reverses the order of the deputy commissioner of November 16, 1960 is quashed with directions to affirm said award and to award a reasonable attorney's fee to the claimant's attorney for his services before the full commission.
It is so ordered.
ROBERTS, C.J., and TERRELL, THOMAS and THORNAL, JJ., concur.
NOTES
[1] The original order of the deputy awarding compensation was dated November 16, 1960; the applications for review by both employer and carrier and employee were dated December 1 and December 2, 1960 respectively. The deputy sua sponte modified his order without notice by a new order dated December 5, 1960.
[2] Concord Realty Corporation v. Romano, 159 Fla. 1, 30 So.2d 495 (1947). To the same effect see 100 C.J.S. Workmen's Compensation § 734 wherein it is stated:

"After proceedings for review or appeal are taken from a decision or award of a board or commission, the board or commission ordinarily ceases to have further jurisdiction over the controversy pending the appeal; it cannot consider new evidence presented on a petition for rehearing, further testimony cannot be taken before it, and an order made by the commission while a petition for review is pending is unauthorized and a nullity. * * *"
* * * * *
"* * * As a general rule the commissioner cannot modify the award or make a change in his decision, at least without notice to the parties, after an appeal is taken, * * *."
[3] U.S. Casualty v. Maryland Casualty, supra.
[4] In Pixley v. Packer Pontiac, 131 So.2d 721, at p. 723 (Fla.) we stated:

"We again point out that the full commission, as stated in, among other cases, Wiedman v. Daryl Products Corporation, Fla. 1961, 127 So.2d 448, 450, is not authorized to make findings of fact:
"`The full commission, while it has the statutory obligation to affirm, reverse, modify or remand, must do so, so far as factual matters are concerned, on the basis of the findings of facts of the deputy and not on the separate substituted findings of its own.'"
[5] Laney v. Holbrook, 150 Fla. 622, 8 So.2d 465, 146 A.L.R. 202 (1942).
[6] 1 Larson, Workmen's Compensation Law, Section 27.21 (1952). See also the following cases from other jurisdictions: Oklahoma Railway Co. v. Cannon, 198 Okla. 65, 176 P.2d 482 (1946); Texas Employers Insurance Association v. Ferguson, Tex.Civ.App., 196 S.W.2d 677 (1946); Transport Co. of Texas v. Arkansas Fuel Oil Co., 210 Ark. 862, 198 S.W.2d 175 (1946); Ramczik v. Winona Machine & Foundry Co., 174 Minn. 156, 218 N.W. 545 (1928); Waters v. William J. Taylor Company, 218 N.Y. 248, 112 N.E. 727 (1916); Leary v. Department of Labor and Industries, 18 Wash.2d 532, 140 P.2d 292 (1943).
[7] Boyd v. Florida Mattress Factory, Inc., 128 So.2d 881 (Fla. 1961).
[8] If we are to assume the act was outside the regular duties which the full commission has independently found, it is not denied by the full commission it was done in good faith. On this point Larson, Section 27 states:

"§ 27.00 An act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered, is within the course of employment."