**David RAY, Plaintiff-Appellee,**

v.

**Joseph EDWARDS, Ilhan Ermutlu, the Board of Human Resources, and the Georgia Association of Retarded Citizens, Defendants-Appellants.**

No. 83–8098.

United States Court of Appeals, Eleventh Circuit.

Feb. 24, 1984.

Vivian Davidson Egan, Asst. Atty. Gen., Atlanta, Ga., for Edwards & Ermutlu.

Jonathan A. Zimring, Samuel P. Pierce, Jr., Atlanta, Ga., for Ga. Assoc.

A. Lee Parks, Jr., Atlanta, Ga., for plaintiff-appellee.

Before JOHNSON and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an interlocutory appeal from the district court's partial denial of appellants' motions for summary judgment. The district court, 557 F.Supp. 664, certified two issues for our review, which in the district court's opinion raised questions over which there is room for substantial disagreement because of their novel nature, and which, if reversed on this appeal, would terminate the present litigation without the necessity for a trial. Unfortunately, in the present state of the case, we cannot reach one issue, but we do decide the other.

## I. BACKGROUND

Plaintiff-appellee David Ray is the former Superintendent of the Georgia Retardation Center, a 400-bed facility for the mentally retarded operated by the Georgia Department of Human Resources. Ray held his position as a nontenured employee, at the will of the Commissioner of the Department, from June, 1979 until he was fired in November, 1981. Defendant-appellant Joseph Edwards became Commissioner of the Department of Human Resources in March, 1980, and is responsible for firing Ray. Defendant-appellant Ihlan Ermutlu became Director of the Division of Mental Health and Mental Retardation, which made him Ray's immediate superior, in August, 1981. Defendant-appellant Georgia Association of Retarded Citizens (GARC) is a private, nonprofit corporation organized under Georgia law, which seeks adequate and appropriate services for mentally retarded persons.

Beginning in the spring of 1981, our cast of characters became embroiled in controversy as allegations surfaced that the Georgia Retardation Center ("the Center"), run

by Ray, was poorly administered, and, more seriously, that employees at the Center were, with the knowledge of administrators at the Center, physically and mentally abusing the patients housed there. By the fall of 1981 the controversy had become public, and media attention focused on Ray and the Center. On November 9, 1981, GARC delivered a statement to Edwards and Ermutlu, summarizing an independent investigation conducted by GARC and urging the suspension of all administrative personnel at the Center. At the same time, the Georgia Bureau of Investigation (GBI) was conducting its own investigation of the Center, initiated at Edwards's request. Meanwhile, the media storm continued unabated, and three days later, on November 12, 1981, Edwards fired Ray.

Shortly thereafter, Ray filed this action in the United States District Court for the Northern District of Georgia. Ray's complaint contained seven counts. Counts one and two alleged that the defendants had violated 42 U.S.C. §§ 1983 and 1985[1] by conspiring to injure Ray and deny him his property (count one) and liberty (count two) interests while he was a public employee. Count three raised a substantive due process claim against the state defendants. Count four contended that the Board of Human Resources was unconstitutionally constituted.[2] Count five raised a pendent defamation claim against GARC, contending that the November 9, 1981 statement libeled Ray, and count six pleaded slander against Edwards and Ermutlu for public statements allegedly made during the course of the controversy over the Center. Finally, count seven raised a pendent state claim for intentional infliction of emotional distress by several defendants.

Appellants moved for summary judgment or dismissal on every count. The district court granted summary judgment on counts one, three, and seven, reserved its ruling on counts five and six, and denied appellants'

motions for summary judgment on count two. Apparently feeling some doubt about its ruling on count two, however, the district court certified two issues raised by appellants' motion for summary judgment on that count as appropriate for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). An administrative panel of our court granted leave to proceed with this interlocutory appeal in an unpublished February 7, 1983 form order.

The first issue, which is explained in more detail in the discussion that follows, is whether a public employee may prove that his liberty interest was violated simply by showing that he was fired at a time of such public controversy that his superiors should have known he would be stigmatized. Although this issue presents delicate public policy problems that balance the need for state agencies to act in an emergency against the need of an employee to protect himself or herself from false and malicious allegations, we cannot reach the issue because it is not appropriate for determination on this interlocutory appeal.

The second issue is whether a private, nonprofit advocacy association enjoys absolute immunity under the first amendment from liability for petitioning the government for redress of grievances and for its assertion of its right to comment on public officials and events. We affirm the district court's ruling that such an association has only the limited immunity afforded by *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

## II.  DISCUSSION

### A.  THE IMPROPRIETY OF INTERLOCUTORY REVIEW OF ISSUE ONE

In count two of his complaint, Ray contended that his termination constituted an unconstitutional infringement of his liberty because the resulting stigma to his reputation has foreclosed his employment opportu-

---

1.  Ray subsequently dropped the § 1985 claim.

2.  Count four was the only claim against the Board of Human Resources (BHR). The district court granted the BHR's motion to dismiss

count four, thereby dismissing the BHR from the case. The BHR is not a party to this interlocutory appeal.

nities. As the district court acknowledged, such an alleged stigma to reputation in connection with a discharge may state a § 1983 claim for deprivation of a fourteenth amendment liberty interest without due process. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). In their motions for summary judgment, the appellants contended, however, that Ray must demonstrate that the stigma was caused by their direct disclosure of false, derogatory information about him, and that Ray had failed to come forward with any admissible evidence of such disclosures. Ray countered that he need only show that appellants knew or should have known that his firing amidst the GBI's ongoing inquiry into the situation at the Center and the media attention focused on the Center would result in his being stigmatized in the public mind. The district court agreed with Ray's position and refused to grant summary judgment on that basis.

Nevertheless, the district court felt that the issue merited interlocutory review by this Court pursuant to 28 U.S.C. § 1292(b). Under that statute, the district court may certify an interlocutory order for appeal if the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. We agree with the district court that the issue, as framed, presents a question of first impression in this circuit, over which there could be substantial ground for difference of opinion. We hold, however, that the district court erred in finding that its ruling amounted to a *controlling* question of law "in the sense," stated the district court, "that it is determinative of plaintiff's claim in this count of his complaint."

The district court overlooked the possibility that even if the standard put forward by appellants is correct, Ray might still be able to produce evidence showing that appellants were directly responsible for the disclosure of false, derogatory information. Such evidence would respond to the more limited legal theory proposed by appellants, thereby creating a factual issue such that the district court would not need to rule on Ray's broader legal standard.

That Ray might produce such evidence was a real possibility. Ray attempted to rebut appellants' motions for summary judgment on counts five and six, the defamation claims, by submitting an affidavit to which he attached newspaper articles in which some of the appellants allegedly defamed Ray. The district court declared that the newspaper articles contained inadmissible hearsay evidence, but allowed Ray additional time to depose the reporters who wrote the articles, in an attempt to produce admissible evidence. Ray took the necessary depositions and has filed them with the district court, but, to the best of our knowledge, the district court has yet to determine whether the depositions contain admissible testimony. Therefore, appellants' motions for summary judgment on counts five and six remain in limbo. The district court appears to have overlooked the fact that the evidence relevant to counts five and six is also relevant to count two.

We believe that evidence that appellants made false, derogatory statements to reporters about Ray at or near the time he was fired, coupled with appellants' denials of making any such statements, raises a significant factual issue sufficient to defeat summary judgment on count two. Therefore, for us to reach the legal question of whether Ray could prevail if that factual issue is resolved against him would be tantamount to issuing an advisory opinion. That, we cannot do.[3]

---

**3.** We are not bound by the February 7, 1983 order of another panel of this court initially exercising its discretion, *see* 28 U.S.C. § 1292(b), to allow interlocutory review of this issue. This court has a duty to review its

jurisdiction of an appeal, *sua sponte* at any point in the appellate process. The February 7, 1983 order issued without the benefit of full briefing and argument. Obviously, had the prior panel been aware that interlocutory review

Even if we could reach the issue posed here by appellants, we would be reluctant to do so. The facts of this case are quite complicated. We find ourselves uncertain, in the present state of the record, of the relationships between Ray, Edwards, Ermutlu, GARC, the GBI, and the press. In particular, it is unclear from whom the news media got its information and the extent of the various defendants' involvement in supplying that information. Yet, these facts might shed light on the legal approach necessary when a public employee's firing during the midst of a public controversy results in an obvious stigmatizing effect on the employee. Even if ·the public employer itself makes no false, derogatory ·statements when it fires the employee, it seems clear that the employee can be stigmatized by the timing of his firing, and yet have no opportunity to clear his or her name. On the other hand, the state needs the freedom to act in an emergency. Thus, appellants raise an important issue, which involves delicate considerations of public policy. We would be loath to tackle such an important issue without full factual development, for facts often influence policy in a new area of the law. Of course, our observations here are not meant to intimate our views on the merits of this subject.

### B. THE SCOPE OF GARC'S IMMUNITY

GARC contended in its motion for summary judgment that it is immune from suit because its activities have absolute first amendment protection. The district court rejected that contention, but certified the issue for interlocutory appeal. We also reject GARC's contention.

In this case, Ray has alleged that GARC wilfully, maliciously, and in bad faith conspired with state officials to have him discharged under circumstances GARC knew or should have known would stigmatize Ray's professional reputation and foreclose his future employment opportunities. Although the district court noted that such a conspiracy would be difficult to prove, the court found that there was sufficient evidence to raise a factual issue on the claim. In the present posture of this case, we must review Ray's allegations as if they were true. Thus, the essence of GARC's argument is that because it was engaged in constitutionally protected speech, it is completely shielded from liability even if it wilfully conspired with state officials to defame Ray and deny him future employment opportunities. The argument must fail.

We agree with GARC that its activities to further the interests of Georgia's retarded citizens are political activities protected by the first amendment. But first amendment protection is not absolute. If Ray can show that GARC conspired with the state officials and acted with "actual malice," he may prevail. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964).

Nevertheless, GARC contends that its activities acquired absolute immunity under *In re Quarles,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895), as a communication by a private citizen to his government to assist the government in correcting a wrongdoing. Under *Quarles,* "such information given by a private citizen, is a privileged and confidential communication, for which no action of libel or slander will lie." *Id.* at 535–36, 15 S.Ct. at 961. *Quarles* is inapposite to this case, however, because Ray does not claim that GARC simply reported its suspicions of wrongdoing, however erroneous they might be, to the government in a confidential manner.[4]

of the district court's order would necessitate our rendering an advisory opinion, it would not, and could not, have granted review. Therefore, we now partially vacate as improvidently granted the February 7, 1983 order. We leave intact that part of the order allowing review of the immunity issue raised by GARC and discussed below.

4. The facts of *Quarles* are far removed from those in the case at hand. In *Quarles* an individual informed a United States deputy marshall that the petitioners had violated federal revenue laws. In retaliation, the petitioners attempted to murder the informer. The petitioners were tried and convicted in federal court for violating the informer's constitutional

Rather, Ray accuses GARC of conspiring with state officials to make *public* information GARC allegedly knew was false, and thereby to harm Ray intentionally. Of course, the burden of proving these allegations will be on Ray at trial.

GARC also attempts a second analytic tack to support its first amendment immunity claim. GARC asserts that it is "especially protected from any claims arising from its exercise of its rights to political speech." It then cites *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), for the proposition that GARC's political activities are entitled to absolute immunity, or at least greater protection than that provided by *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Again, GARC's reading of Supreme Court cases is erroneous.

In *Claiborne,* white merchants in Mississippi sought damages from the NAACP and various individuals who participated in a four year boycott by black citizens against the white merchants. The blacks used an economic boycott to promote their demands for increased political participation and an end to their second-class citizenship status in a rural Mississippi town. The Supreme Court held that the boycott was political activity, protected by the first amendment. But the Court never stated that the constitutionally afforded protection was *absolute.* Rather, the Court stated that "the presence of activity protected by the First Amendment imposes *restraints* on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." 458 U.S. at 916–17, 102 S.Ct. at 3428 (emphasis added). The Court then examined the Mississippi court's findings that violence, coercion,

and other constitutionally *nonprotected* activities permeated the boycott and caused the merchants' damages. The Court applied strict scrutiny to those findings because of the first amendment values intertwined in the purpose of the boycott, and held that the Mississippi court's findings did not support the ultimate judgment against the defendants. *Id.* at 932, 102 S.Ct. at 3436. Rather, the Court held that the white merchants' damages stemmed almost entirely from the success of the peaceful and legitimate aspects of the boycott. In short, the merchants failed to connect their damages to the sporadic violent aspects of the boycott. Thus, *Claiborne* clearly leaves room for a plaintiff to show that a group *exceeded* the bounds of its first amendment protection, even though engaged in political activity.

■ Having determined that GARC did not enjoy absolute immunity for its political activities in this case, we must still decide whether it enjoyed sufficient immunity to require the entry of summary judgment in its favor. That is a relatively easy question. The Supreme Court has already determined that when a group engaged in constitutionally protected speech is accused of libeling a public official, that group is protected unless it made false statements with "actual malice" to harm the official. *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Because GARC is accused of defaming Ray and of conspiring with others to disseminate information in a deliberate attempt to injure him, under the actual malice standard of *New York Times,* GARC may not be protected. GARC's representation of a lofty cause—the rights of retarded citizens—does not entitle it to any greater

---

rights. In their petition for habeas corpus, petitioners claimed they should have been tried in state court, because there was no federal violation involved. The Supreme Court rejected petitioners' arguments, holding that every private citizen has a federally protected right to inform his government of a violation of its laws, and that a conspiracy to injure someone for exercising that right was punishable under federal law.

In the case at hand, GARC has not claimed that Ray conspired to prevent GARC from informing the state of Georgia about abuses at the Georgia Retardation Center, a fact situation that would be analogous to *Quarles.* Rather, Ray has claimed that GARC *abused* its right in a deliberate attempt to injure him when, he asserts, he had done nothing wrong.

protection than any other person or group accused of libel or defamation. Thus, if Ray can prove his allegation that GARC acted with actual malice toward him, he may prevail. The district court found that sufficient evidence existed to raise an issue of fact with regard to actual malice. Therefore, the district court's denial of summary judgment was proper and GARC must proceed to trial.

### III. CONCLUSION

We lament that appellants have been able to delay trial in this case for over a year through an interlocutory appeal, a mechanism intended to speed, not to retard, the judicial process. For the reasons stated above, we VACATE that part of this court's February 7, 1983 order allowing an interlocutory appeal on the issue of the scope of Ray's liberty interest claim, but leave intact that part of the order allowing an interlocutory appeal on GARC's immunity claim. We then AFFIRM the district court's denial of summary judgment on GARC's immunity claim, and REMAND this case for further proceedings.