**William THOMASON,**
**Plaintiff-Appellant,**

v.

**J. Pete McDANIEL, et al.,**
**Defendants-Appellees.**

No. 85–3302.

United States Court of Appeals,
Eleventh Circuit.

July 18, 1986.

---

Edward S. Stafman, Tallahassee, Fla., for plaintiff-appellant.

Patricia Guilday, Tallahassee, Fla., for Town of Sneads, Conrad, Hatcher.

Frank A. Baker, Marianna, Fla., for McDaniel.

Before RONEY and CLARK, Circuit Judges, and FAIRCHILD *, Senior Circuit Judge.

PER CURIAM:

William Thomason alleges that he was fired from his part-time patrolman job with the Town of Sneads, Florida, because he arrested County Commissioner J. Pete McDaniel's son for driving while intoxicated and that Commissioner McDaniel conspired with Sneads officials to cost him his job. Thomason sued a number of public officials in both their official and individual capacities alleging a variety of constitutional and federal violations. 42 U.S.C.A. §§ 1983 and 1985(2). The district court granted summary judgment to defendants on the ground that there was no evidence that the alleged conspiracy took place, and no evidence to support any other theory of federal action. We affirm.

■ Plaintiff has cited no cases, and our own research has revealed no support for the major proposition presented: that it would be unconstitutional for the Town of Sneads to fire Thomason, an at-will, part-time employee, because he arrested the son of an influential citizen. Therefore, the hearing Thomason seeks for the purpose of proving that fact would be fruitless, even if the district court was wrong in its determination that there is no evidence to create a triable issue on the fact.

---

* Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

■ Thomason had no property interest in his job. The point is governed by state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The so-called police officers' bill of rights in the Florida Statute, upon which Thomason relies, is specifically inapplicable to part-time police officers. Section 112.531–.534, Fla.Stat.Ann. *See Migliore v. City of Lauderhill,* 431 So.2d 986 (Fla.1983) (adopting 415 So.2d 62, 64 (Fla. 4th DCA 1982)). The theory of the Pennsylvania state case of *Petras v. Township of Union,* 409 Pa. 416, 187 A.2d 171 (1963), is of no help to Thomason. In *Petras* the Court established the following test to determine whether an employee was employed full time:

> The test to be imposed therefore, is not the number of days, length of hours, or terms of employment but rather whether or not the duties were such that he was 'available for full employment,' that is on call at any and all times.

*Id.* 187 A.2d at 174.

Thomason fails to qualify as full time under the *Petras* test. At the same time Thomason was employed by the Town of Sneads, he worked forty hours a week as a security guard, as a full time employee at Florida State Hospital.[1] Thomason was not available for full employment because he could not have been on call at any and all times and hold another full time job. *See Yatzor v. Showman,* 5 Pa.Cmwlth. 291, 290 A.2d 425 (Pa.Cmwlth.1972).

■ Thomason next argues that he had a *de facto* property right in his employment based upon the Sneads police manual. The manual, contrary to Thomason's argument, does not meet the property right requirement of Florida law, which requires the statute or ordinance to list specific grounds for discharge of a public employee or state that a public employee can only be terminated for just cause. *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir. 1982) (interpreting Florida law); *Ragucci v. City of Plantation,* 407 So.2d 932, 935 (Fla.App.1981); *Laney v. Holbrook,* 150 Fla. 622, 8 So.2d 465, 467 (1942). As the district court observed, the manual appears to be a "compilation of pages copied from other sources, and its origin is unknown; it has no date, and bears no stamp of official adoption or approval." *Glenn v. Newman,* 614 F.2d 467 (5th Cir.1980), relied upon by Thomason, involved Georgia law and a manual-created property right based on two significant features not present in the Sneads manual. First, there was a "for cause" provision, and second, a detailed appeals and grievance procedure was set forth. *Glenn,* 614 F.2d at 469–71, nn. 2 & 4.

Without a property interest in his job, Thomason was entitled to no due process termination hearing. The district court correctly held:

> ... a temporary employee, a probationary employee, or a part-time employee, has no right to notice and a hearing since his tentative and restricted employment does not amount to a property interest in continued employment sufficient to trigger constitutional protections. *Cf. Codd v. Velger,* 429 U.S. 624, 51 L.Ed.2d 92, 97 S.Ct. 882 (1977); *Jacobs v. College of William and Mary,* [495 F.Supp. 183 (E.D.Va.1980)].

Since Thomason could be fired for no reason at all, and Thomason has not alleged facts to support the claims that he was fired for an unconstitutional reason, there simply would be nothing the firing body would be required to hear to justify its action.

■ Thomason also contends that his discharge constituted an unconstitutional infringement of his liberty because the resulting stigma to his reputation has injured his standing in the community and foreclos-

---

1. Thomason testified at his deposition:
   Q. Are you employed on a full-time basis anywhere?
   A. Yes, I am.
   Q. Where is that at?
   A. Florida State Hospital.
   Q. In what capacity at the Florida State Hospital?
   A. I'm an institutional security specialist.

ed other law enforcement-related employment opportunities. To constitute deprivation of a liberty interest, the stigmatizing information must be both false, *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam), and made public, *Bishop*, 426 U.S. at 348, 96 S.Ct. at 2079, 48 L.Ed.2d 684 (1976), by the governmental entity, *Paul v. Davis*, 424 U.S. 693, 708–10, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). The district court held that Thomason did not satisfy the requirement of publication because he "ha[d] failed to establish that any disclosure of the 'reasons for the discharge,' that is, the substance of the complaints, was ever made to the general public."

Approximately one month after the arrest upon which Thomason bases his claim, the Sneads Town Council held a special meeting. The pertinent minutes of that meeting show the following:

> Mr. Conrad also reported that he had received several complaints on Officer Billy Thomason's performance as a Sneads police officer. He noted that Thomason is on a parttime, temporary status and it was not necessary, in his opinion, to hold a hearing in order to cease using him as a policeman. After discussion among the councilmen, Mr. Conrad was authorized to tell the Chief, John Hatcher, that Mr. Thomason's services were no longer needed by the Town, and the action was to be effective immediately.

The parties in the briefs before us suggest that a woman employed at a convenience store claimed that Thomason verbally harassed her after she refused to date him, and that another woman employed at a different convenience store informed the police that Thomason had tipped her off regarding a planned investigation and stake-out of the convenience store where the woman alleging verbal sexual harassment was employed. But the public officials gave no publicity about these complaints, if indeed, they are the ones relied upon for the firing.

Thomason argues that his claim is sufficiently made out on a showing that defendants knew or should have known that his discharge amidst the arrest of defendant McDaniel's son and the investigation of the convenience store incidents would result in his being stigmatized in the public mind. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446–47 (2d Cir. 1980) (carefully conceived scheme of innuendo meets the dissemination of a false and defamatory impression requirement); *An-Ti Chai v. Michigan Technological University*, 493 F.Supp. 1137, 1157 (W.D.Mich. 1980) (adopting knows or reasonably should have known publication standard). This Court was asked to review such a claim in *Ray v. Edwards*, 725 F.2d 655 (11th Cir. 1984). Although the Court decided the issue on alternative grounds and did not issue an opinion regarding the publication standard, the Court did observe:

> Even if the public employer itself makes no false, derogatory statements when it fires the employee, it seems clear that the employee can be stigmatized by the timing of his firing, and yet have no opportunity to clear his or her name. On the other hand, the state needs the freedom to act in an emergency. Thus, appellants raise an important issue, which involves delicate considerations of public policy.

*Ray*, 725 F.2d at 659.

In our judgment, however, the district court correctly determined that the facts asserted in this lawsuit do not form a proper base for such a claim. Indeed, as the district court correctly found, the newspaper coverage and town conversation occurred months after the termination and resulted not from Town disclosure, but from Thomason's filing of complaints with the Florida Commission on Ethics and the federal court. *In Bishop v. Wood*, the Supreme Court gave this admonishment:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made dai-

ly by public agencies (footnote omitted). We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. at 349–50, 96 S.Ct. at 2079–80.

■ The Supreme Court has recognized that the discharge of a public employee might make him less desirable to other employers, but "it stretches the concept of [liberty] too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Board of Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). This was specifically confirmed with respect to the "discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." *Bishop*, 426 U.S. at 348, 96 S.Ct. at 2079. *See Hamilton v. City of Wake Village*, 593 F.Supp. 1294, 1297 (E.D.Tex 1984). Thomason has not established that specific information concerning the reasons for his termination was released to other employers to foreclose other law enforcement job opportunities.

Thomason alleges two equal protection violations. First, he claims that the Town has created two classes of police officers, namely one that arrests members of the public and one that arrests relatives of influential persons. Second, he raises a freedom of association claim based on the right to believe in lawful political ideals, such as that no special law enforcement favors be given to influential citizens.

These claims are without merit. The rest of Thomason's claims were decided correctly by the district court.

We affirm the district court's grant of summary judgment on all federal claims, and find that it was unnecessary for the court to consider the pendent state claims.

AFFIRMED.