**Bruce MITCHELL, et al., Plaintiffs,**

**v.**

**LEALMAN VOLUNTEER FIRE CO., et al., Defendants.**

**No. 93–2140–CIV–T–23A.**

United States District Court, M.D. Florida, Tampa Division.

Sept. 30, 1996.

James A. Sheehan, Law Offices of James A. Sheehan, St. Petersburg, FL, for Bruce Mitchell, Jack Tapscott and Harold Artille.

Gary W. Miracle, Law Offices of J.A. Setchel, Tampa, FL, for Lealman Volunteer Fire Co., Inc., Roger P. Berg, Dominic Vigari, Fred L. Shepherd, Gregory M. Gaulard, Robert W. Neuberger, Sr. and Francis Miller.

Robert David Hall, Jr., Alley and Alley/Ford & Harrison, Tampa, FL, for Pinellas County.

## ORDER

MERRYDAY, District Judge.

This case presents itself on the defendants' motions for summary judgment (Docs. 26 and 39). Because the record fails to contain a genuine issue of material fact, the defendants' motions are **GRANTED**. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiffs.

The material facts surrounding this case are not in dispute. Lealman Volunteer Fire Company ("Lealman") is a private, nonprofit corporation that provides fire protection and emergency medical services to Pinellas County (the "County"). Lealman is governed by a board of directors (the "Lealman Board").[1] The County is governed by a five-member Board of County Commissioners (the "County Board").

Lealman employed the plaintiffs in various managerial capacities. Harold Artille, Bruce Mitchell, and Jack Tapscott served as Lealman's "deputy chiefs" for operations, emergency medical services, and prevention, respectively. The plaintiffs do not have written employment agreements with Lealman for these positions.

Starting in October of 1992, *The St. Petersburg Times* published a series of articles criticizing Lealman's management and operations. In response, the County conducted an investigation. Based on that investigation, county administrator Frank Marquis recommended to the County Board that it allow Lealman's contract to lapse without renewal.[2]

In the following months, the Lealman Board conducted its own investigation of the allegations contained in *The St. Petersburg Times* articles and voted to restructure its management by, among other things, dismissing Artille and eliminating the positions held by Mitchell and Tapscott.[3] The Lealman Board offered the plaintiffs neither pre- nor post- deprivation hearings in relation to these employment decisions. On the other hand, the plaintiffs never requested such hearings. Alleging that the defendants deprived them of property and liberty interests without due process, the plaintiffs commenced this action pursuant to 42 U.S.C. § 1983.

To prevail on their property-interest claims, the plaintiffs must establish, among other things, that they possessed a cognizable property interest—that is, a legitimate claim of entitlement to continued employment. Whether such an entitlement exists depends on state law. *See Blanton v.*

---

1. During the relevant time period, the Lealman Board consisted of defendants Roger Berg (chairman), Gregory Gaulard, Francis Miller, Robert Neuberger, Sr., Fred Shepherd, and Dominic Vigari. The parties agree that qualified immunity precludes the plaintiffs' claims against these defendants. In accordance with the parties' stipulation, the claims against the individual defendants are **DISMISSED WITH PREJUDICE.**

2. The County ultimately renewed its contract with Lealman.

3. The Lealman Board simply demoted Mitchell and Tapscott.

*Griel Mem. Psychiatric Hosp.*, 758 F.2d 1540 (11th Cir.1985).

The parties agree that, without written employment contracts, the plaintiffs' relationships with Lealman were terminable at will. However, a valid property interest in employment is not created exclusively by contract. A legitimate expectation of continued employment may result from sundry rules or regulations that designate specific grounds for discharge. *See Kelly v. Gill*, 544 So.2d 1162 (Fla. 5th DCA 1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1477, 108 L.Ed.2d 614 (1990).

In support of their motions, the defendants submit an affidavit from Richard Headley, Sr., a former Lealman Fire Chief. At the times relevant to the plaintiffs' claims, Headley was Lealman's top management official who implemented the rules and regulations promulgated by the Lealman Board. In the affidavit, Headley states unequivocally that the Lealman Board specifically considered a disciplinary procedure for Lealman's management personnel, but never officially adopted one.

The plaintiffs do not materially dispute this critical declaration. Instead, they submit a "Policy Manual" (the "manual") as the sole basis to support their property interest claims. The manual delineates disciplinary terms and procedures, as well as a disciplinary review mechanism, for some of Lealman's employees. However, the manual is inapplicable to the plaintiffs.[4]

In their submissions, the plaintiffs concede that the disciplinary review mechanism contained in the manual does not apply to Lealman's management employees. The terms of the manual itself distinguish between upper management and rank-and-file employees. For example, the manual authorizes supervisors to discipline lower rank employees and to review disciplinary actions against those employees. *See Warren v. Crawford*, 927 F.2d 559 (11th Cir.1991) (holding manual distinguishing between management and rank-and-file employees failed to constitute protectible property interest in favor of management). Although the plaintiffs testified at deposition that a *separate* manual exists for Lealman's management employees, they have neither produced such a manual during discovery nor filed a copy in response to the defendants' motions. By relying on merely conclusory, unsubstantiated allegations of a protectible interest, the plaintiffs are unable to avoid summary judgment.[5]

Additionally, Lealman prevails on its qualified immunity defense. A private party performing a public function pursuant to a contract with a public entity enjoys the benefits of qualified immunity. *See Dolihite v. Maughon*, 74 F.3d 1027 (11th Cir.1996).[6] Because Lealman's employment decisions as to the plaintiffs were indisputably within its scope of discretionary authority, the burden shifts to the plaintiffs to show that Lealman violated a "clearly established" property interest in rendering those decisions. *See Zeigler v. Jackson*, 716 F.2d 847 (11th Cir. 1983). However, a terminable-at-will employment relationship fails to constitute a clearly established property interest.[7] Ac-

---

**4.** The undated manual appears to be a compilation of materials from scattered and unidentified sources. The document also fails to bear an official seal or stamp of authority. *See Thomason v. McDaniel*, 793 F.2d 1247 (11th Cir.1986) (discrediting personnel manual under similar circumstances).

**5.** In any event, the record at most establishes that the plaintiffs *believed* that disciplinary procedures existed for their benefit. However, for-cause employment status arises only from a mutual and explicit understanding between the employer and the employee. Here, the plaintiffs held merely abstract, unilateral expectations of continued employment. These expectations fail to result in a constitutionally protected property

interest. *See, e.g.*, *Bryant v. Shands Teaching Hosp. and Clinics*, 479 So.2d 165 (Fla. 1st DCA 1985); *Berrian v. National R.R. Passenger Corp.*, 429 So.2d 1381 (Fla. 2d DCA 1983).

**6.** The plaintiffs suggest that a government contractor performing a public function is deprived of the same immunity protections afforded to government officials. However, the law is contrary to their position. *See Sherman v. Four County Counseling Ctr.*, 987 F.2d 397 (7th Cir. 1993); *Smith v. U.S.*, 850 F.Supp. 984 (M.D.Fla. 1994).

**7.** In any event, the law is insufficiently defined to render the plaintiff's property interest based on the policy manual "clearly established."

cordingly, Lealman is qualifiedly immune from any claims associated with its decisions to either dismiss or demote the plaintiffs without affording them due process hearings. *See Bailey v. Board of County Comm'rs,* 956 F.2d 1112 (11th Cir.1992), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).

▋ Lealman is also entitled to summary judgment on the plaintiffs' liberty interest claims. To establish these claims, the plaintiffs are required to demonstrate the existence of (1) false, (2) stigmatizing charges (3) made public by the defendant (4) without allowing the plaintiffs an opportunity to refute the allegations lodged against them. *See Blanton v. Griel Mem. Psychiatric Hosp.,* 758 F.2d 1540 (11th Cir.1985). During the deposition of Artille, counsel for the plaintiffs stipulated that the alleged public statements supporting the liberty interest claims derive solely from a set of newspaper articles attached to Artille's deposition. A review of those papers, however, reveals that Lealman's public comments regarding the plaintiffs fail to support a liberty interest claim. According to the newspaper articles, Lealman (through its counsel) actively defended its management despite adverse media coverage. The plaintiffs' concession contained in the pretrial stipulation supports this conclusion: "no member of the Lealman Board of Directors ... made a defamatory comment about any Plaintiff." Absent Lealman's publication of false and stigmatizing statements, the plaintiffs' liberty interest claims fail. *See Sullivan v. School Bd.,* 773 F.2d 1182 (11th Cir.1985) .[8]

▋ Finally, the County is not vicariously liable for either Lealman's or the county administrator's conduct. A local government cannot be held liable under section 1983 on a theory of *respondeat superior.* To be actionable, the alleged constitutional deprivation must result directly from a policy implemented or practiced by the local government. *See Manor Healthcare Corp. v. Lomelo,* 929

F.2d 633 (11th Cir.1991). The county administrator's conduct, including his contacts with members of the Lealman Board, is insufficient. The isolated decisions of a local government employee (like the county administrator) constitute official policy only if the employee acted with final policy making authority. In this case, the County's final policy making authority rests with the County Board and not the county administrator. The absence of any evidence tending to show that the alleged constitutional violations resulted from a policy established or practiced by the County, or from a County official acting with final policy making authority, forecloses the plaintiffs' claims against the County. *See Bailey v. Board of County Comm'rs,* 956 F.2d 1112 (11th Cir.1992), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).

---

8. At the relevant time period, the law was insufficiently established with respect to whether allegations of ineptitude against a public employee necessitated a name-clearing hearing. Accordingly, had it made such allegations against the plaintiffs, Lealman would be qualifiedly immune

from the plaintiffs' liberty interest claims as well. *See Robinson v. City of Montgomery,* 809 F.2d 1355 (8th Cir.1993); *Griswold v. Alabama Dep't of Indus. Relations,* 903 F.Supp. 1492 (M.D.Ala. 1995).