BOARDMAN, EDWARD F., (Ret.) Judge.
The Housing Authority of the City of Tampa appeals the final declaratory judgment rehiring and reinstating Rubin Robinson with back pay to his prior position as a permanent employee of the Housing Authority and awarding Robinson attorney’s fees. Robinson has filed a cross-appeal.
The record discloses the following, rather lengthy, chronology. In the summer of 1976 Robinson was hired by the Housing Authority. Robinson’s initial employment status was that of Project Manager I at an apartment complex located in Port Tampa. His employment responsibilities included collecting the rent, supervising staff and maintenance personnel, and overseeing the entire housing complex. In January of 1977, as a result of his first six-month employment evaluation, Robinson became a permanent employee of the Housing Authority and thereafter was transferred to a west Tampa apartment complex.
Robinson was promoted to the position of Project Manager II in November of 1978 and again transferred, this time to a complex in the Sulphur Springs area. Robinson’s duties as Project Manager II were essentially the same as before. Pursuant to the Housing Authority’s policy and procedure manual, Robinson began serving a nondisciplinary, 90-day probationary period in conjunction with his new position.[1]
*160 In January of-1979, during the continuation of Robinson’s probationary period, Fifi Glymph became the district supervisor of the Housing Authority. After assuming her new position, Glymph started reviewing the files of the various housing projects. She discovered that Robinson had failed to complete annual rent examinations, to correctly reexamine the tenant’s continued eligibility for public housing, to inspect the residential units and to draw up leases properly.
Over the next several months, Glymph counseled Robinson concerning the condition of his files. In March of 1979, Robinson was reprimanded for the misuse of Housing Authority funds. Then in May of 1979, after several conversations with Robinson about the inadequacy of his work, Glymph sent him a written reprimand. The reprimand provided in pertinent part as follows:
Verbally and in writing I have given you directions on many occasion [sic] on the lack of information concerning matters that should be within your resident folders in order to perfect a rent change.

This kind of work performance will not be tolerated any longer....
Failure to comply with this or any other directives as they are given, more stronger disciplinary actions will be taken.
Glymph reviewed Robinson’s files again in August of 1979. She learned that Robinson had neglected to correct the prior deficiencies and further determined that all of his files were in substandard condition. Because of Robinson’s inaction, Glymph conferred with her supervisor, Mr. Ever-sole, and requested that Robinson be placed on disciplinary probation, to which Eversole agreed. Both parties then met with Robinson and informed him that he was being placed on three months probation and of the reasons therefor. During this meeting, Robinson was presented a memorandum prepared by Glymph which read as follows:
Your position as Project Manager of Riverview Terrace is in serious jeopardy, because you are not performing to the expectation of this agency (as manager).
While checking your resident folders for the period of March 1, 1979 thur [sic] July 31, 1979, I found your files to be in deplorable condition. There are resident-files that should have had an annual reexamination in May, June, and July that were not done, and there was no evidence in the files that you even made an attempt to send for the resident for the reviews.
Many of your specials and rent reductions are not resolved when schedule [sic] to be, requested information concerning resident computations are not followed up.

In the best interest of the residents and the Housing Authority, you are being placed on a 90 day probation, and during which time you must correct any and all the deficiency [sic] that I have pointed out to you concerning the operation of your office.
Failure to comply with this directive will leave me no alternative but to recommend that you be dismissed from your duties as Project Manager of Riverview Terrace, on the grounds of lack of performance.
If you wish a conference concerning this memorandum, please feel free to contact me. Good luck.
Robinson refused to sign the memo or to accept a copy of it.
*161 Robinson subsequently corresponded with Glymph by letter dated August 10, 1979. In the letter Robinson pointed out that his promotional probationary status had expired on February 5, 1979, and that Glymph had failed to complete a performance evaluation as required by section 305.-15(4) of the Housing Authority’s policy and procedure manual.
By October 18, 1979, Robinson had shown no improvement in his work. Glymph therefore sent a letter to Eversole requesting permission to extend Robinson’s probationary period until December in order to give him additional time to bring his work up to standard. A copy of this letter was sent to Robinson. Eversole agreed to the extension.
Approximately a week later, Robinson mailed a letter to Glymph objecting to the postponement of his evaluation. Maurice Young, the deputy director of the Housing Authority, received a copy of this letter. On October 29, 1979, Robinson sent a second letter directed to Young himself asking him to find out why Robinson’s evaluation had been held up. Young contacted Ever-sole and requested that he resolve the matter. As a result of Young’s intervention, Eversole ordered Glymph to do the evaluation.
After completing the evaluation and reviewing it in detail with Eversole, Glymph called Robinson on the morning of October 31, 1979, and asked him to come to her office at 3:00 that afternoon. During that meeting, at which Eversole was also present, Glymph explained to Robinson that she had requested permission to extend his probationary period but had been ordered to evaluate his work at that time. Glymph discussed with Robinson the fact that she was recommending his termination due to inadequate job performance. At the conclusion of the conference, Robinson refused to sign the evaluation because he did not agree with it. Robinson was then asked to leave the room.
After Robinson left, Glymph told Ever-sole that she thought Robinson should be terminated. She explained that she had tried to work with him over the past several months and that she should have charged him with insubordination. Ever-sole agreed with Glymph’s recommendation, and Robinson was called back into the office and told of his discharge effective at 5:00 that afternoon. Robinson was given two weeks pay in lieu of notice and informed that he could appeal the evaluation within two days.
Robinson then contacted the personnel coordinator of the Housing Authority requesting a copy of the agency’s grievance procedure. Robinson submitted a written grievance to the Housing Authority. The Housing Authority never responded to the grievance, but there is some question in the record as to whether Robinson filed the grievance on time.
In addition to filing his grievance, Robinson met with several officers of the Housing Authority. Robinson contacted Ever-sole the day after his discharge. Eversole told Robinson that he concurred with Glymph’s decision. That same day Robinson spoke with Alton White, the executive director of the Housing Authority. Robinson presented White with his personnel file so White could review it. After meeting with Robinson on more than one occasion, reviewing the file and the circumstances surrounding his termination, White concluded that Robinson had been justifiably discharged. White notified Robinson that he would not be reinstated to his former position.
Robinson also contacted Donald Whitte-more, chairman of the Board of Commissioners of the Housing Authority, and asked him to look into the dismissal. During this meeting, Whittemore offered to have the personnel committee of the Board of Commissioners review Robinson’s situation, but Robinson declined the offer. At the conclusion of the meeting, Whittemore told Robinson that he would investigate the situation, look through Robinson’s file, consult the executive director, Alton White, and get back to him. Whittemore discussed Robinson’s termination with both *162 Alton White and Commissioner Rubin Pad-gett, chairman of the personnel committee.
After reviewing the entire matter, Whittemore concluded that Robinson had been justifiably discharged. Whittemore informed Robinson of his decision by letter dated December 14, 1979. After receiving the letter, Robinson recontacted Whitte-more and asked him to review his termination again. As before, Whittemore offered Robinson the opportunity of a hearing before the personnel committee, but Robinson once again refused the offer.
On April 19, 1980, after talking with almost every member of the Housing Authority Board of Commissioners about his termination, Robinson filed the instant declaratory action. Robinson sought relief as to whether his interest in his expectation of continued employment with the Housing Authority could be deprived without sufficient cause and/or without due process of law; whether he was accorded procedural due process when he was terminated by the Housing Authority; and whether the Housing Authority, its agents, and its employees failed to comply with one or more of the provisions of its policy and procedure manual in the actions taken against Robinson.
At a pretrial conference in April of 1981, Robinson argued that the complaint alleged a breach of contract issue based on the Housing Authority’s failure to comply with its policy and procedure manual. The trial court disagreed, finding no cause of action for breach of contract. The court offered Robinson the opportunity to amend the complaint but advised the parties that the trial would have to be continued if the complaint was amended. Robinson decided not to amend the complaint.
The cause came to trial in May of 1981, although the extended litigation did not conclude until August of 1982. Then in November 1982, after both parties had submitted posttrial memoranda, Robinson filed a motion to amend the complaint to conform to the evidence adduced at trial. In the motion, Robinson noted that the parties did not have the benefit of a pretrial order or ruling excluding any right, claim, or theory of recovery of Robinson. Robinson further noted that the suit was one of declaratory relief in which Robinson sought to have rights and entitlements determined and to be relieved of his wrongful termination regardless of how denominated.
The trial court ultimately entered an order on February 1, 1988, compelling rehiring and reinstatement. The order contained the following ruling and findings:
RULINGS ON PENDING MOTIONS
1.Plaintiffs Motion to Amend Complaint to Conform to Evidence Adduced at Trial — I find that Plaintiff clearly abandoned his contract theory at the Pre-Trial Hearing. I further find the evidence adduced at the trial by Plaintiff in support of the contract theory was objected to by the Defendant and thus this issue was not tried with the consent of the Defendant. Based on the foregoing, this Motion of Plaintiff to Amend is hereby denied, and Defendant’s motion to strike the Plaintiff’s motion to amend is granted.

FINDINGS OF FACT
1. I find that Plaintiff was employed by “THA” on July 22, 1976 as a Project Manager I; and that on November 29, 1976, plaintiff was duly evaluated after serving a 6 month initial hire probationary period and was made a permanent employee of “THA” in the position of Project Manager I.
2. I find that on November 6, 1978, plaintiff was promoted to the position of Project Manager II and was placed on a 90 day promotional probationary status in the position of Project Manager II; and that Plaintiff was not given a promotional probationary evaluation on his performance in the position of Project Manager II, but instead was given a termination evaluation on the afternoon of October 31, 1979, the day of his termination.
3. I find that on October 31,1979, Fifi Glymph, Plaintiff’s immediate supervi *163 sor, terminated Plaintiff effective at 5:00 P.M. on the same day from any and all employment with the “THA”, [sic] without an opportunity to return to the position of Project Manager I.
4. I find that “THA” promulgated a written Policy and Procedure Manual, “Manual”, [sic] which contained a fairly comprehensive set of rules, regulations and policy statements which governed the employee-employer relationship between “THA” and its employees. I further find that the “Manual” was in full force and effect at all times material to this case.
5. I find that for several months proceeding [sic] the date of his discharge, there had been continuous criticism and interaction between the Plaintiff and his immediate supervisor, Fifi Glymph. Although this pre-discharge criticism of Plaintiffs work performance could be considered pre-termination counseling, I find that the summary manner in which the Plaintiff was terminated, with two (2) weeks pay in lieu of notice, challeges [sic] the adequacy of the pre-termination conference.
6. I do not find that a proper post-termination hearing would have resulted in Plaintiffs termination from all employment at “THA”, [sic] indeed it appears likely that at such a hearing Plaintiff would have had a fair chance of reinstatement of some sort — either as a Project Manager I or II. In this regard, I find it significant that Plaintiff received good evaluations as a Project Manager I, and that he was in a promotional probationary status as a Project Manager II, when Ms. Glymph became his immediate supervisor.
7. I find that after his discharge, Plaintiff properly and timely filed a grievance with “THA” regarding his termination thereby, [sic] precluding any waiver of his post-termination rights of hearing.
8. I find that the dispute among the officials of “THA” as to whether Plaintiff was entitled to any post-termination rights; and the lack of any established form or procedure for grievance, and post-termination conferences or hearings, colors the events following the date of Plaintiffs discharge and resulted in his grievance being ignored. The circumstances mentioned corroborate the Court’s conclusion of lack of due process.
9.I find that Plaintiff was never accorded a hearing at which he could confront witnesses against him, rebut the charges against him, call other witnesses on his own behalf, or be represented by counsel.
Additionally, the court concluded as a matter of law that the provisions of the Housing Authority’s policy and procedure manual created for its permanent employees a reasonable expectation of continued employment and a protectable property interest in continued employment, that the pre-termination conference held at the time of Robinson’s discharge satisfied minimum due process, and that Robinson was entitled to, but did not receive, a fair hearing at the posttermination stage.
Final judgment was entered in July 1983, which judgment incorporated the court’s earlier findings of fact, conclusions of law, and other rulings. From this judgment, both parties appeal.
The Housing Authority challenges the trial court’s conclusions of law. It first submits that the trial court erred in finding that the Housing Authority policy manual provided Robinson with a constitutionally protected property interest in his employment and that he was therefore entitled to procedural due process in connection with the termination of his employment. The Housing Authority further contends that assuming arguendo that Robinson did have a property interest in his job, the trial court erred in finding that Robinson was not afforded a posttermination hearing that satisfied the requirements of due process.
Robinson, on the other hand, contends that the circumstances surrounding his termination were such that he was denied the procedural due process guaranties of sufficient notice and a fair opportunity to be *164 heard. Robinson further contends that the Housing Authority’s violations of its personnel rules resulted in the violation of his substantive due process rights. On cross-appeal, Robinson challenges the trial court’s ruling that he abandoned the breach of contract claim.
Having thoroughly examined the record, we conclude that Robinson’s termination comported with minimum constitutional due process standards. Therefore, we reverse the final declaratory judgment rehiring Robinson. In view of our determination on the due process questions, we do not discuss the threshold issue of whether Robinson has a property interest in his continued employment.
The requirements of procedural due process under the fourteenth amendment to the United States Constitution and article I, section 9 of the Florida Constitution are reasonable notice and a fair opportunity to be heard. These requirements are flexible concepts to be discerned from the facts of each case. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Indeed, our supreme court has noted “there is ... no single, unchanging test which may be applied to determine whether the requirements of procedural due process have been met.” Hadley v. Department of Administration, 411 So.2d 184, 187 (Fla.1982).
In the instant case, Robinson submits that Ms. Glymph’s one-sentence termination letter was insufficient notice of the specifics of his unsatisfactory work performance. On this record we must disagree. The record demonstrates several instances over the nine-month period prior to October 31, 1979, where Glymph notified Robinson, either orally or in writing, of the deficiencies in his work performance. Glymph had even placed Robinson on disciplinary probation, at which time she presented him with a memorandum detailing the problems with his work and warning him of the possibility of dismissal. Therefore, we can only conclude that notwithstanding the conclusionary nature of the termination letter, Robinson was sufficiently apprised of the deficient areas of his work performance. For the same reasons, we reject Robinson’s additional contention that any review of his termination would have suffered from the lack of specificity in the termination letter.
We also believe Robinson was provided a fair review of the circumstances surrounding his discharge. Robinson contacted several officers of the Housing Authority, all of whom reviewed Robinson’s personnel file and ultimately concurred with the decision to terminate him. Although Robinson did not receive a formal posttermination hearing, the chairman of the Housing Authority Board of Commissioners twice offered to assemble the personnel committee of the Board to review the dismissal. As previously mentioned, Robinson refused the offers. Robinson also failed to challenge Glymph’s criticism of his work prior to termination through the available grievance procedure. It is clear that it is the opportunity for some form of a hearing that is constitutionally guaranteed and not the hearing itself. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Because Robinson has failed to take advantage of the opportunities made available to him, we cannot say that he has been unconstitutionally deprived of his procedural due process rights. See Downing v. Williams, 624 F.2d 612 (5th Cir.1980), (Ainsworth, J., dissenting), adopted as majority opinion on rehearing, 645 F.2d 1226 (5th Cir.1981); Stewart v. Bailey, 556 F.2d 281 (5th Cir.1977), on rehearing, 561 F.2d 1195 (5th Cir.1977); Pinson v. Hendrix, 493 F.Supp. 772 (N.D. Miss.1980), aff'd, 660 F.2d 495 (5th Cir.1981).
Robinson further submits that the fact that the Housing Authority failed to follow its grievance procedure nullifies any contention that the posttermination review complied with minimum due process. Again, we must disagree. It is undisputed that neither Glymph nor Eversole ever responded in writing to Robinson’s grievance. *165 However, Glymph’s secretary, Felicia Gant, testified that she never received the grievance form from Robinson. Furthermore, Gant and Glymph both testified that Robinson could not have filed the grievance with Gant on November 5, 1979, as he claimed, since she was away on her honeymoon at that time. We realize, of course, that a trial court’s finding comes to us clothed with a presumption of correctness. Nevertheless, in view of the foregoing testimony, we seriously question the trial court’s finding that Robinson timely filed his grievance.
But even assuming Robinson did file within the allotted time, we do not think he was prejudiced by the Housing Authority’s failure to respond. The grievance procedure provides that an employee’s grievance may potentially be reviewed by, in succession, his or her immediate supervisor, the department head, the executive director of the Housing Authority, and finally, the chairman of the Board of Commissioners of the Housing Authority. And that is essentially what happened here, albeit on an informal basis. Robinson initially contacted Eversole, Glymph’s supervisor, who informed Robinson that he agreed with Glymph’s decision. Eversole had previously conferred with Glymph concerning the circumstances of the dismissal. Robinson later met, on more than one occasion, with both the executive director, Alton White, and the chairman of the Board of Commissioners, Donald Whittemore. Both men reviewed the entire situation, concluding that Robinson should not be rehired. Furthermore, Robinson by his own admission ultimately contacted almost every member of the Housing Authority Board of Commissioners.
With respect to Robinson’s substantive due process claim, we agree with the Housing Authority that Robinson did not prove such a cause of action. Robinson apparently fails to realize that a substantive due process cause of action necessitates proof that he was terminated in an arbitrary and capricious manner and for an improper motive. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Robinson conceded at trial that his discharge was based on inadequate job performance, certainly a justifiable motive.
Finally, we turn to Robinson’s cross-appeal. Robinson argues that the bottom line of his cross-appeal is that the Housing Authority failed to follow its policy and procedure manual, resulting in a deprivation of his substantive due process rights and a breach of implied contract rights. Upon review of the record, however, it becomes apparent that Robinson is really contesting the trial court’s denial of his motion to amend the complaint to conform to the evidence adduced at trial. Robinson wished to amend the complaint to allege a cause of action for breach of contract based on the Housing Authority’s violations of its policy and procedure manual. We find no abuse of discretion on the part of the trial court in denying the motion, and, therefore, we deny the cross appeal.
Accordingly, we reverse the final declaratory judgment rehiring and reinstating Robinson with back pay and affirm the trial court’s denial of the motion to amend.
RYDER, C.J., and SCHEB, J., concur.

. Section 305.14 PROBATIONARY PERIOD
All employee(s) appointed to permanent positions shall serve a probationary period of six (6) months. All promoted employees will serve not more than a ninety (90) day probationary period in the new position.
1. Any employee appointed or promoted to a probationary status may be removed or demot *160 ed at any time without notice during the probationary period in the event his/her performance does not meet required work status.
2. Unsatisfactory performance during a probationary period shall be sufficient cause for removal or demotion.
3. An employee rejected during the probationary period from a position to which he/she had been promoted, shall be reinstated to the position from which he/she had been promoted, unless he/she is discharged for reasons other than unsatisfactory performance.
4.Before an employee’s completion of the probationary period, a performance rating shall be conducted. If retained the employee will be considered a permanent employee.