Douglas W. BETTS, Plaintiff,

v.

CITY OF EDGEWATER, a municipal corporation, Earl D. Baugh, as Mayor and individually, Louis J. Rotundo, as Councilman and individually, Russell S. Prater, as Councilman and individually, Neil Asting, as Councilman and individually, and James W. Inman, as Councilman and individually, Defendants.

No. 85–273–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

Oct. 23, 1986.

Ronald A. Nour, Ormond Beach, Fla., Bruce Rogow, Ft. Lauderdale, Fla., for plaintiff.

Jose B. Alvarez, Deland, Fla., Kimberly A. Ashby, Orlando, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE KENDALL SHARP, District Judge.

This action, alleging a violation of constitutionally protected property rights by defendants, was tried before the Court without a jury. At the end of plaintiff's case, the Court granted defendants' motion for involuntary dismissal in accordance with Rule 41(b) of the Federal Rules of Civil Procedure. Based upon the facts admitted by the parties in their joint pre-trial stipulation, the testimony, and evidence admitted at trial, the Court enters the following findings of fact and conclusions of law, pursuant to Rules 41(b) and 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff Douglas W. Betts was interviewed as a candidate for Edgewater Police Chief before a Special Meeting and Work-

shop of the Edgewater City Council (City Council, council) on July 12, 1984. At that meeting, plaintiff was told that there was a six-month probationary period and that there would be no employment contract. The testimony of a member of that City Council, Melbourne Wargo, was that no department heads had employment contracts with the city.

Plaintiff was appointed Chief of Police for the City of Edgewater, Florida, by Resolution No. 84–R–32 of the City Council on July 16, 1984, effective on August 1, 1984. Among other terms and conditions of employment, plaintiff's position was contingent upon a satisfactory background investigation; successful completion of a six-month probationary period; and service at the will of the City Council. His annual salary was $22,500.00. Regarding termination, Resolution 84–R–32 provided:

> Termination of the appointment shall be by thirty (30) days written notification from either party. If the City Council chooses to terminate the applicant at any time after the probationary period, the thirty (30) days written notification shall provide written reasons and afford an opportunity for the Chief to be heard.

The City Council held a Special Meeting on October 19, 1984, at which plaintiff was present. A major topic of discussion was the purchase of police vehicles by plaintiff, who allegedly did not comply with the city's purchasing regulations. Plaintiff read a prepared statement, which attributed his problems in administering the Police Department to the City Clerk. He described the low morale of the Police Department; the concern regarding his remaining in office; and the City Clerk's attempts to discredit him and his staff by attacking their decisions. The upshot of this meeting was that there must be cooperation among the City Council, the City Clerk and the Police Chief, and that plaintiff must be more careful regarding city purchasing procedures in the future.

In October, 1984, the City of Edgewater made an inquiry into plaintiff's employment as a Florida Highway Patrol Officer from May 3, 1976 to March 15, 1977. The Florida Department of Highway Safety and Motor Vehicles responded that plaintiff was not eligible for rehire based upon his unsatisfactory performance as a patrol officer. Because of plaintiff's "Conditional" rating by his immediate supervisor on his nine-month Employee Performance Evaluation, plaintiff's probation period was extended three months from February 3, 1977 to May 2, 1977. Plaintiff resigned from the Florida Highway Patrol on February 23, 1977, effective March 15, 1977. Cross examination of plaintiff elicited that his previous law enforcement employment was characterized by short tenures, reprimands, and a probation period.

In November, 1984, four of the five City Council members were voted out of office; thus, they acted in a "lame duck" capacity. At a Special Meeting of the City Council on November 16, 1984, a motion to give plaintiff a one-year contract was withdrawn after the Mayor noted that only the City Attorney and City Engineer were under contract and that he would not endorse a contract for plaintiff. Councilman Asting expressed concern regarding any attempt "to tie the hands" of the new Council, following the local election. On November 19, 1984, the City Council approved Resolution No. 84–R–56, which repealed conflicting resolutions, removed plaintiff from probation status, and appointed him Chief of Police of Edgewater. With respect to termination, Resolution 84–R–56 stated:

> Termination of this appointment shall be for cause only, said cause being malfeasance, misfeasance or nonfeasance, after written charges specifying the reasons therefor and an opportunity to refute said charges at a hearing that shall afford procedural due process.

On November 28, 1984, a Special Meeting of the newly elected City Council was held to consider, among other matters, Resolution 84–R–56. The general consensus of the new City Council, concurred in by a representative Edgewater citizen, was that they desired to review plaintiff's performance as Police Chief and to reinstate his

original six-month probationary period would provide this opportunity. Plaintiff's counsel, who attended the Special Meeting, stated that plaintiff considered Resolution 84–R–56 to be a binding employment contract upon the City of Edgewater. He also explained that the section of Resolution 84–R–56, which repealed conflicting resolutions, eliminated Resolution 84–R–32, and, consequently, plaintiff's "at will" employment. Therefore, under Resolution 84–R–56, plaintiff's attorney argued that plaintiff could not be terminated except "for cause" and with appropriate due process. He contended that to restore plaintiff to probation was a disciplinary action to which the same due process should be accorded as with termination under Resolution 84–R–56. The City Council countered that Resolution 84–R–56 was not an employment contract and that the due process associated with termination was not triggered with replacing plaintiff on non-disciplinary probation in order for the new City Council to evaluate his performance as Police Chief. Accordingly, a motion was passed that the City Attorney prepare a resolution reinstating plaintiff to his original six-month probation period, which had commenced August 1, 1984, with no change in his pay or responsibilities.

The City Council had a regular meeting on December 3, 1984, at which the resolution restoring plaintiff to probationary status was an item of business. Plaintiff attended the meeting and stated that the proposed resolution deprived him of the property right of job security without due process, including reasonable notice and a hearing. The City Council told plaintiff that he merely was being returned to his original, agreed terms of employment; that he was losing no rights as Police Chief; and that he was not being threatened with termination. Accordingly, the City Council passed Resolution No. 84–R–61, which reinstated plaintiff's original probationary status until February 1, 1985, repealed conflicting resolutions, and was immediately effective.

At the City Council Special Meeting and Workshop on Friday, January 11, 1985,

Councilman Asting, the one councilman who remained on the City Council after the November, 1984, election, observed that there had been no improvement with purchasing procedures utilized by plaintiff. This was confirmed by the Mayor and City Clerk. He also stated that plaintiff had represented that the three police cars purchased by the city were to be used for patrol work. Instead, only one was being used for patrol, one was being used by plaintiff, and the other was being used by plaintiff's assistant/records clerk/secretary. Councilman Asting wanted an explanation for this violation of the agreement for the use of the police cars between the City Council and plaintiff. Plaintiff responded that he had not made such a promise.

The Mayor recounted instances when plaintiff was inexplicably away, such as a trip to the West Coast. Council members stated their concern about plaintiff's traveling eighty-five miles per hour on the highway and asked the reason for his hurry. Plaintiff responded that he could not remember.

Plaintiff was questioned regarding his assistant/records clerk/secretary. The council elicited that, instead of using Police Department pagers, plaintiff and his assistant were using two of her personal pagers because of wider range capability and that the city was paying rent for these pagers. Furthermore, plaintiff admitted that his assistant had a city police radio in her private car because of the responsibility that he had given her and his need to contact her. Plaintiff was informed by Councilman Asting that this was misuse of city property. The Mayor also told plaintiff that his allowing his assistant to drive a patrol car to Seminole Community College was a misuse of the city car and a violation of the City Council's direction.

With respect to affirmative action, plaintiff was asked why in August, 1984, he rejected a female officer applicant, who required a forty-hour refresher course to be recertified, and later asked the City

Council to send his assistant to school for 420 hours. Plaintiff responded that the position was "spoken for" and stated that he was not satisfied with the applicant. The Mayor also stated that plaintiff had told him that he did not have any openings, which was recorded in the council minutes, and a week later hired a new man. Plaintiff responded that he did not remember such a conversation.

Plaintiff was asked why a new officer was alone in a patrol car on his second day. Plaintiff responded that the training officer was either sick or on vacation and that he needed the new officer there. Furthermore, a councilman noted that the daylight shift on December 31, 1984, for the entire City of Edgewater was covered by two patrolmen, one with two days of experience and one with two months of experience. The Mayor informed plaintiff that he had a picture of a patrol car without a license plate, which allegedly was authorized by plaintiff, who said that he would need to see the picture.

Councilman Asting and the Mayor announced that there would be another meeting before the end of plaintiff's probation period for the sole purpose of determining whether he would continue employment with the city. All pertinent information concerning plaintiff and his management of the Police Department was requested to be made available to council members so that they could make an informed decision. Furthermore, the City Clerk was instructed to give all information reviewed by the City Council to plaintiff so that he could respond to it. Plaintiff was told that he would be notified of the subsequent meeting.

On Monday, January 14, 1985, plaintiff was notified of a Special Meeting of the City Council at 2:00 p.m., January 15, 1985, for discussion and possible action on the probation of plaintiff. Former City Council member Gigi Bennington testified that special meetings of the City Council were noticed twenty-four hours in advance. Also on January 14, 1985, plaintiff received documents relevant to the meeting on January 15, 1985. These documents question or criticize conduct by plaintiff in the execution of his duties as Police Chief from August, 1984 through January, 1985. Among the documents are questionable purchases, which include: clearly different penmanship for plaintiff's initials on a $930.00 purchase requisition when compared with his initials on four other requisitions; three different invoices for installation of a radio in the same police car; two separate invoices for one set of hub caps; a request for purchases of officers' uniforms in excess of $1,000.00, which violated city purchasing procedures for authorization; invoices for office furniture for the police department totaling $867.65; purchase of decals for police cars in the amount of $440.40; purchase of three police cars without purchase orders; purchase of a rechargeable flashlight for plaintiff's police car in the amount of $105.20; purchase requisition for new uniforms for plaintiff in the approximate amount of $200.00, including gold chain and whistle; purchase of letterhead stationery and envelopes for plaintiff in the amount of $147.80; and purchase of a gold-plated badge for plaintiff in the amount of $99.50.

Another critical document was a September 4, 1984, letter from the president of the Central Florida Police Benevolent Association to the Edgewater City Clerk. Therein the president recounts a specific instance of plaintiff's threatening to fire a representative of his Association. He advises that harassment of the Association's representatives is an unfair labor practice and that further threats and intimidation of police officers by plaintiff would result in legal action against Edgewater and its Chief of Police. Receipt of this letter was the reason for an emergency Special Meeting of the City Council on September 7, 1984, at which plaintiff was present.

Plaintiff's questionable actions taken on behalf of his assistant/records clerk/secretary were documented by regular approval of overtime; a change in her yearly evaluation score to insure a two-step pay increase; and an affidavit by Councilman

Inman, stating that he had observed that plaintiff's assistant had a city-owned police radio installed in her private vehicle, that she was driving a city vehicle to Seminole Community College in Sanford, Florida, and that she had a city vehicle at her home. With respect to departmental and personal training, plaintiff spent $680.00 for testing materials to be used in selecting police officers, and he had requested the City Council to pay his expenses to attend three continuing education programs during October and November, 1984. The City Council had denied his attendance at one of these programs, not only for financial reasons, but also because of concern that he would be away from his job too many days during the same time period.

Plaintiff was presented with a one-page affidavit by one of the six occupants of the city vehicle, driven by plaintiff to a required seminar for Edgewater Police Department dispatchers at the Volusia County Safety Center on August 23, 1984. The affiant states that plaintiff was driving at excessive speed to and from the seminar and cutting in and out of traffic. When the occupants expressed their frightened concern, plaintiff laughed and told them that he had been trained in pursuit tactics as a Florida Highway Patrol officer and that he knew how to handle a vehicle at high speeds. At the seminar, affiant, seated next to plaintiff, observed that plaintiff paid little attention to the instruction and that he was whispering to his assistant, who also sat beside him. Also among the documents for plaintiff's review was the aforementioned picture, taken by the Edgewater Mayor, of a police vehicle without a license plate being operated on a city street by a police officer.

A number of the documents submitted to plaintiff, concerned a racoon, rabies scare and plaintiff's handling of that situation during December, 1984, and January, 1985. Investigating reports of diseased racoons, displaying rabies symptoms such as foaming at the mouth, police officers shot and disposed of the racoons near the city garbage depository instead of delivering them to the Volusia County Health Department for analysis and diagnosis. Since a city ordinance designates the Chief of Police as Edgewater's animal control officer, plaintiff's conduct regarding this potential hazard to public safety was questioned by the City Clerk/Administrator; by an article in a local paper on January 2, 1985; and severely criticized by an editorial that appeared in a local paper on January 11, 1985. Plaintiff's memorandum explanation was that his understanding of departmental procedure was that an animal was not analyzed but destroyed unless a person was bitten, scratched or insisted that the animal be processed.

The documents for review also included a January 11, 1985, article from *The Orlando Sentinel* reporting that plaintiff said that he expected to be fired by the City Council before his six-month probation period ended on February 1, 1985. The article represents that the previous council's action, making plaintiff a permanent employee, was one of spite because of the number of its members who lost their seats in the November, 1984, election. The article characterizes the City Council's criticisms of plaintiff as his failure to follow city purchasing procedures, his disobedience of council directives, his conduct of personal business on city time, and his improper use of a city vehicle. The article also quoted the following admission by plaintiff:

"I do slam my people when they need it, but I'm approachable and I do talk and laugh with them the rest of the time. And I did drive 85 miles per hour on the interstate when I was bringing several of my people back from a seminar," he said. "I'm human—not dead—and I needed to return to the station quickly."

Another document submitted to plaintiff for review was a January 12, 1985, article from an area newspaper, which describes "an hour of bikering" between the City Council and plaintiff. The article details plaintiff's tenure as police chief and the criticisms of the City Council over his conduct of his office. It states that the City Council and plaintiff agreed that another

meeting would be scheduled "to let Betts know where he stands."

With respect to the documents given plaintiff to review in preparation for the City Council meeting on January 15, 1985, the Court makes several significant findings. First, the Court finds that the volume of documents for review is deceptive. While one questionable occurrence may be documented by a single picture, such as a police car without a license plate, another questionable incident may require several documents in order to depict the occurrence, such as a purchase requisition, a memorandum of inquiry, and a response. The Court also notes that many of the documents submitted to plaintiff do not require extensive review but merely perusal to determine the reason for inclusion.

Second, the Court finds that the documents for review essentially concern matters about which plaintiff was expected to be familiar. That is, for example, requisitions for purchases that plaintiff made or overtime that he approved. Many of these questionable occurrences had been the subject of inquiry by the City Clerk and plaintiff had submitted a prior, written response. Thus, plaintiff had seen those documents before and their inclusion was for the purpose of refreshing his recollection. Furthermore, he had appeared before the City Council and previously addressed most of the criticisms of his conduct of the Police Department. Not only were the criticisms of the City Council prior personal knowledge by plaintiff, but also they were public knowledge pursuant to the articles that appeared in local and area papers. Therefore, plaintiff should have been familiar with these documents, which recorded complaints that had occurred during his tenure as Police Chief and had been brought previously to his attention.

Third, the Court finds, as a corollary, that plaintiff had sufficient time to review the documents, with which he was presented in preparation for the January 15, 1985, City Council meeting. His explanation of the majority of the documents, which questioned his conduct of his job as a Police Chief, previously had been prepared in written form or addressed to the City Council. The time allowed plaintiff for reviewing documents about which he was or should have been knowledgeable was adequate. Fourth, given the background of criticism from Edgewater citizens, reflected by the local press, and from the City Council, particularly manifested at the January 11, 1985, council meeting, plaintiff had specific notice, through the documents, of his actions that had to be explained or defended.

At approximately 11:00 a.m. on Tuesday, January 15, 1985, plaintiff received from the City Clerk a "recap" of the documented information regarding plaintiff's conduct of the office of Police Chief of Edgewater. The documents were grouped under forty-seven topics or documented incidents which had been questioned. The Special Meeting of the City Council for the purpose of discussing possible action on the probation of plaintiff as Police Chief commenced at 2:00 p.m., January 15, 1985.

Plaintiff told the City Council that he had been presented with the documents approximatley twenty-four hours before without knowing the reason, and that the recap sheet did not indicate questions so that he could prepare or research answers nor was three hours sufficient time to review additional documentation. He admitted that he had "looked through" the documents, but requested ten days to prepare replies to the City Council's questions regarding the documents. Councilman Asting expressed surprise that plaintiff had no answers or rebuttal since the council had reviewed the documents in essentially the same amount of time. Furthermore, the Mayor noted that plaintiff had been questioned regarding the recap items at the City Council meeting on January 11, 1985, the previous Friday, and stressed that the questionable items had accumulated over plaintiff's tenure and represented no new information.

Councilman Asting stated his opinion to the City Council that:

> Mr. Betts does not have the desired administrative ability to manage the Edge-

water Police Department as demonstrated by his actions in the last six months concerning fiscal responsibilities, by continuous irregularities in purchasing procedures, permitting misuse of City vehicles, and irresponsible operation of City vehicles, including unwarranted, excessive high speed driving that could have endangered passengers in the vehicles. Accordingly, upon his motion, the City Council voted to terminate plaintiff as Edgewater Police Chief as of 4:30 p.m., January 15, 1985, and to continue his salary for thirty days from that date. Plaintiff received a memorandum from the City Clerk documenting this action by the City Council. He did not and has not requested any posttermination proceedings. Plaintiff accepted payments from the City of Edgewater over the following month. He received seventeen weeks of unemployment compensation. On May 27, 1985, he became a deputy sheriff for Manatee County. His salary, including a raise at the end of a six-month probation period, was less than his salary as Edgewater Police Chief.

In this action, plaintiff claims that defendants denied him procedural due process in terminating his property interests. First, plaintiff alleges that he was not given due process when the newly seated City Council rescinded Resolution 84–R–56, which made him a termination-for-cause employee, by passing Resolution 84–R–61, which replaced plaintiff on probation. Second, plaintiff claims further due process violations when the new City Council terminated him January 15, 1985. He alleges that both his return to probation and his firing were without sufficient notice, written reasons, cause or procedural due process. Plaintiff seeks lost wages, damages for injury to his career and reputation and reinstatement as Edgewater Police Chief.

Defendants assert that the new City Council acted within its authority when it replaced plaintiff on probation status and that plaintiff was heard through his attorney at a public hearing before this action was taken. Since the problems with plaintiff's conduct of his Police Chief office continued during the remainder of his probation, defendants argue that they were warranted in terminating plaintiff, with thirty days notice and pay after presenting him with documented reasons and allowing him to respond at a public meeting on January 15, 1985. Defendants further contend that plaintiff was never a permanent employee of the City but served throughout his five-and-a-half-month term of office at the will of the City Council. They deny that plaintiff had enforceable property rights and assert that no action under Florida or federal law may be maintained as a result of "at will" employment.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 because plaintiff has alleged a deprivation of constitutionally protected property rights under color of state law. Plaintiff has alleged that he was denied a property right in his job as Edgewater Police Chief without due process under the Fourteenth Amendment by the December 3, 1984, City Council Resolution 84–R–61, which reinstated his original six-month probation period, and by the January 15, 1985 City Council termination of plaintiff's job. Plaintiff may sue the City of Edgewater as well as the individual councilmen and the mayor, acting in their official, policy-making capacity as the City Council, under 42 U.S.C. § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334 (11th Cir.1982); *cf. City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

This Court must apply Florida law provided that federal law has not decided the issue and that Florida law "is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988; *Board of Regents v. Tomanio,* 446 U.S. 478, 484–85, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980); *Robertson v. Wegmann,* 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978). Initially, the Court must ana-

lyze the validity of the pertinent actions by the City Council, that is the three resolutions relevant to plaintiff's employment and his termination as Police Chief. From the testimony and evidence, the Court concludes at the outset that plaintiff did not have an employment contract. This fact explicitly was told him at his interview on July 12, 1984, and reiterated to his attorney at the November 28, 1984, Special Meeting.

Recognizing "that a municipal corporation is an instrumentality of the state established for the more convenient administration of local government," the Supreme Court of Florida has held that:

> The governing body of a municipality can act validly only when it sits as a *joint* body at an authorized meeting duly assembled pursuant to such notice as may be required by law; for the existence of the council is *as a board of entity* and the members of the council can do no valid act except as an integral body.

*Turk v. Richard,* 47 So.2d 543, 543–44 (Fla. 1950) (emphasis in original); *see Nash v. Richard,* 166 So.2d 624, 625 (Fla. 3d DCA 1964) (per curiam). The Court notes that the four City Council meetings at which action was taken regarding plaintiff's job were duly noticed and constituted. Accordingly, the four City Council actions concerning plaintiff's position are individually valid.

■ The City Council's actions employing plaintiff as Police Chief at their will with a six-month probation period, converting him to an employee terminable for cause, and reinstating his original six-month probation period, were accomplished by resolutions. The Florida Supreme Court has described a city council resolution as an order of a "special and temporary character," as opposed to an ordinance, which "prescribes a permanent rule of conduct or government." *Certain Lots Upon Which Taxes Are Delinquent v. Town of Monticello,* 159 Fla. 134, 31 So.2d 905, 911 (Fla.1947) (en banc) (citation omitted); *see Marriott Corp. v. Metropolitan Dade County,* 383 So.2d 662, 666 (Fla. 3d DCA 1980). The Court concludes that the pertinent resolutions were not only valid, but also special and temporary in character.

It also has been held that "[a] duly approved resolution may not be ignored without an express intent to overturn its provisions." *Marriott Corp.,* 383 So.2d at 666–67. Resolutions 84–R–32, 84–R–56, and 84–R–61 contain the identical provision "[t]hat all resolutions or parts of resolutions in conflict herewith be and the same are hereby repealed." Furthermore, the Court is convinced from the minutes of discussions at the various council meetings as well as from the testimony and evidence regarding plaintiff's background and his conduct of his police chief duties that the City Council fully intended to enact the three resolutions, although Resolutions 84–R–56 and 84–R–61 changed provisions of the respective, predecessor resolution. The Court is cognizant that Resolutions 84–R–56 and 84–R–61 reflect information and City Council experience with plaintiff's exercise of his responsibilities that was not known at the time of his employment by Resolution 84–R–32.

With respect to plaintiff's termination on January 15, 1985, the Court reiterates its initial discussion of the validity of City Council actions. The January 15, 1985, Special Council meeting was noticed twenty-four hours in advance, which, according to trial testimony was the procedure for special council meetings. Additionally, the minutes, reflecting plaintiff's presence and containing the council's discussion among themselves, and with plaintiff as well as the unanimous vote of all the City Council members, show compliance with the prerequisites for a valid action by the City Council. Plaintiff was duly terminated on January 15, 1985, and so notified by the vote of the City Council and in a written memorandum from the City Clerk to plaintiff on that date.

■ Having determined the validity of the relevant actions by the City Council regarding plaintiff's job as Edgewater Police Chief, the Court must decide the re-

spective effects and the requisite due process. Resolution 84–R–32, enacted on July 16, 1984, provided that plaintiff would serve at the will of the City Council and included a six-month probationary period. Plaintiff does not have a constitutional right of due process unless he has a property interest in his employment as Edgewater Police Chief under Florida law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *see Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "At will" employment under Resolution 84–R–32 does not meet the property right prerequisites of Florida law because it does not specify grounds for discharge or state that termination can be only for just cause. *Thomason v. McDaniel,* 793 F.2d 1247, 1249 (11th Cir.1986) (per curiam); *Hearn,* 688 F.2d at 1332; *Laney v. Holbrook,* 150 Fla. 622, 8 So.2d 465, 467 (1942); *Ragucci v. City of Plantation,* 407 So.2d 932, 935 (Fla. 4th DCA 1981) (per curiam). In holding that an "at will" Sneads, Florida, patrolman, who was fired for arresting a county commissioner's son for driving while intoxicated, could be fired for no reason at all, the Eleventh Circuit recently upheld the decision of the district court that:

> ... [A] temporary employee, a probationary employee, or a part-time employee, has no right to notice and a hearing since his tentative and restricted employment does not amount to a property interest in continued employment sufficient to trigger constitutional protections.

*Thomason,* 793 F.2d at 1249; *see Purdy v. Cole,* 317 So.2d 820, 823 (Fla. 3d DCA 1975), *appeal dismissed,* 330 So.2d 16 (Fla. 1976); *see also Blanton v. Griel Memorial Psychiatric Hospital,* 758 F.2d 1540, 1544 (11th Cir.1985) (Plaintiff "had no valid expectation of continued employment during this probationary period."). Pursuant to Resolution 84–R–32, plaintiff had no due process rights regarding termination of his employment as Edgewater Police Chief, while he was on probationary status.

Resolution 84–R–56, passed on November 19, 1984, by the lame-duck City Council in which four of five council members were not re-elected, parallels Resolution 84–R–32. Resolution 84–R–56, however, conflicts with and, consequently, repeals plaintiff's "at will" service and six-month probationary period of Resolution 84–R–32. The enactment of Resolution 84–R–56 transformed plaintiff from an "at will" employee to a "for cause" employee. That is, he moved from a status of "at will," probationary employment, where termination could occur for no reason with no entitlement to due process, to a status under Florida law and Resolution 84–R–56, whereby termination could occur "for cause only" after written charges specifying the reasons and an opportunity to refute the charges at a hearing that would afford due process. *Cf. Thomason,* 793 F.2d 1247; *Hearn,* 688 F.2d 1328; *Laney,* 8 So.2d 465; *Ragucci,* 407 So.2d 932. Resolution 84–R–56 defines "cause" as "malfeasance, misfeasance or nonfeasance." Therefore, while in effect, Resolution 84–R–56 delineated the procedural due process to be accorded to plaintiff prior to termination.

By Resolution 84–R–61, enacted and immediately effective December 3, 1984, plaintiff was restored to his original probationary status until February 1, 1985. The obvious reference is to the six-month probation period of Resolution 84–R–32, making plaintiff's employment as Edgewater Police Chief effective on August 1, 1984, the probation period of which would have ended February 1, 1985. The evidence and testimony make clear that other terms and conditions of plaintiff's employment, such as his salary, remained unchanged from Resolution 84–R–32 through Resolution 84–R–61 because, pursuant to the common provision that conflicting resolutions or parts thereof are repealed, these terms and conditions do not conflict. It is apparent that by Resolution 84–R–61, the City Council removed plaintiff from his "for cause" termination status and reinstated his probationary or "at will" termination status.

Plaintiff contends that he acquired a property interest in job security pursuant to his "for cause" termination status under Resolution 84–R–56, and that this property interest was taken away without due process by Resolution 84–R–61, which returned plaintiff to "at will" termination status. Based upon the particular facts of this case, the Court concludes that Resolution 84–R–61 is valid and that plaintiff was not denied due process. First, given the Court's previous discussion of the temporary and special character of resolutions under Florida law, the Court notes that the duration of Resolution 84–R–56, establishing plaintiff's "for cause" termination, was exactly two weeks. *Cf. Shelton v. City of Atlanta,* 796 F.2d 1391, 1392 (11th Cir. 1986) (per curiam) (Summary judgment for defendants was affirmed in a § 1983 action where plaintiff, who had been a patrolman in the Atlanta Police Department and, then, a detective for more than ten years after serving a twelve-month probation period, was reclassified as a patrolman.).

The Court also is cognizant that Resolution 84–R–56 was enacted by a lame-duck City Council in which four of five members had not been re-elected. The Court need not speculate as to suggested reasons that the lame-duck council may have had in enacting Resolution 84–R–56 because both Resolution 84–R–56 and Resolution 84–R–61 were valid actions by the two City Councils. However, a resolution, lacking the permanency of an ordinance and enacted for a special purpose, is subject to change by the City Council. *Certain Lots Upon Which Taxes Are Delinquent,* 31 So.2d at 911; *see Marriott Corp.,* 383 So.2d at 666. Plaintiff was not serving under an ordinance or binding employment contract, but rather a temporary, special-purpose resolution. Resolution 84–R–61 was a new, preempting and valid resolution although containing the non-conflicting terms transmitted from original Resolution 84–R–32 and restoring plaintiff to the six-month probation period that he was serving prior to Resolution 84–R–56.

Second, plaintiff was not terminated by Resolution 84–R–61, he was restored to probation. Plaintiff received the same salary and executed the same responsibilities as he had before Resolution 84–R–61 was passed. During the discussion of Resolution 84–R–56 at the Special Council meeting of the new council on November 28, 1984, the council members specifically informed plaintiff's attorney that plaintiff was not under an employment contract with the city and that they were not considering terminating plaintiff, but rather returning him to probation in order to give the new council an opportunity to evaluate his performance as Police Chief. Given his continued infractions of city policy despite warnings from City Council, the Court notes the plaintiff could have been terminated for cause, malfeasance, misfeasance or nonfeasance, with due process required by Resolution 84–R–56 at this point in his employment with the City of Edgewater. Instead, he was replaced on probation, allowing additional time for the City Council to review him and for plaintiff to rectify his conduct of the Police Department.

Third, the citizens of Edgewater should not have a police chief, who openly breaks the law and disregards public welfare, foisted upon them. The City Council as the elected representatives of the people of Edgewater, had a duty to act in the best interests of its constituents, certainly, as to their safety and wellbeing. The Court notes that Councilman Asting, the one council member who remained constant, had reservations regarding plaintiff's employment from the outset and that an Edgewater citizen, who appeared at the Special Council meeting on November 28, 1984, voiced his opinion that returning plaintiff to probation was the desire of Edgewater citizens. The Court also is aware that plaintiff's questionable conduct had persisted, exacerbating the concern of the City Council.

Plaintiff's performance as Edgewater Police Chief did not improve following his return to probationary status. In fact, his mishandling of the racoon, rabies scare, as perceived by the City Council and the public, occurred in December, 1984, and Janu-

ary, 1985. Plaintiff was notified of the January 15, 1985, Special Meeting of the City Council on January 14, 1985, and he was given documentary evidence of his questionable conduct of his duties for review and refutation. On January 15, 1985, plaintiff was given a one-page topical recap of the documentary evidence that he was given the previous day, which itemized forty-seven causes for complaint or concern by the City Council. The Court reiterates that plaintiff was familiar with these occurrences. At the January 15, 1985, Special Meeting of the City Council, plaintiff was terminated as Edgewater Police Chief and his salary was continued for thirty days. This City Council action was memorialized in a January 15, 1985 memorandum to plaintiff. Although this action was not accomplished by resolution, Florida courts have held that the integral action of a municipal governing body at a duly authorized and noticed meeting is valid. *Turk,* 47 So.2d at 543–44; *see Nash,* 166 So.2d at 625.

Defendants' argument that plaintiff's probationary or "at will" employment, pursuant to Resolution 84–R–61 was terminable without cause by the City Council on January 15, 1985, is tenable, as discussed by the Court herein. *Thomason,* 793 F.2d at 1249; *Hearn,* 688 F.2d at 1332; *Laney,* 8 So.2d at 467; *Ragucci,* 407 So.2d at 935; *see Blanton,* 758 F.2d at 1544. Alternatively, assuming that plaintiff did have a property interest in his continued employment, the Court concludes that his termination met the due process "for cause" requirements and the requirements of Resolution 84–R–56. The Supreme Court has held that the "essential requirements of due process" for tenured, public employees at the pre-termination stage "are notice and an opportunity to respond." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). *Loudermill* states that the "employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence," and describes the responsive opportunity as "[t]he opportunity to present reasons, ei-

ther in person or in writing, why proposed action should not be taken.... an opportunity to present his side of the story." *Id.* Following *Loudermill,* the Eleventh Circuit has found "that *oral* notice and an opportunity to respond *orally* is sufficient in the pretermination context." *Kelly v. Smith,* 764 F.2d 1412, 1414 (11th Cir.1985) (emphasis in original). Furthermore, *Loudermill* depicts the pretermination hearing as:

"[S]omething less" than a full evidentiary hearing is sufficient prior to adverse administrative action.

. . . . .

It should be an initial check against mistaken decisions—essentially, determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

. . . . .

To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495 (citations omitted); *Kelly,* 764 F.2d at 1414.

The Eleventh Circuit, finding no procedural or substantive due process violations, recently affirmed summary judgment for defendants in the "for cause" termination of the Superintendent of the Water Production Division, Cape Coral Utilities Department, who had been a ten-year employee of Cape Coral, Florida. *Marshall v. City of Cape Coral, Florida,* 797 F.2d 1555 (11th Cir.1986). It was undisputed that plaintiff had not observed water quality standards, including failure to conform to mandated maximum contamination limits. At a ten-to-fifteen-minute meeting with his supervisor, plaintiff was given a letter, detailing his performance deficiencies, and he was told that he was fired, effective in three days. Plaintiff was represented by counsel during his post-termination grievance procedures.

Not only did the *Marshall* court find that plaintiff was not denied *Loudermill* or Cape Coral procedural due process, but also it found that he was not denied substantive due process because it held that the charges of deficient performance were not pretextual. *Marshall*, 797 F.2d at 1560–61; *see Kelly*, 764 F.2d at 1413; *Hearn*, 688 F.2d at 1332–33. Furthermore, with respect to plaintiff's failure to utilize all available procedural options, *Marshall* stated: "A volitional choice to forego available procedures, however unwise, cannot give rise to a subsequent complaint that one has been 'deprived' of procedural protections." *Marshall*, 797 F.2d at 1560.

■ Applying *Loudermill* and relevant Eleventh Circuit decisions, interpreting Florida law, this Court concludes that plaintiff had sufficient notice and opportunity to respond if, indeed, he did have a property interest at stake. The public and City Council criticism already had escalated to the point of confrontation and response at the January 11, 1985, City Council Special Meeting. Plaintiff specifically was informed at the January 11, 1985, meeting that a subsequent meeting would be held for the sole purpose of determining whether he would continue as Edgewater Police Chief and that he would be provided with documentation of the City Council's concerns regarding his management of the Police Department for the purpose of response. The Court concludes, when plaintiff received his January 14, 1985 notice of the January 15, 1985, Special Council Meeting, for the purpose of possible action on his probation, and the critical documents, that he was amply notified to prepare his response. Plaintiff had both oral and written notice.

Furthermore, plaintiff was not presented with new criticisms, but the documentation of prior City Council inquiries, and his responses, and questionable matters that he had addressed previously before the City Council. The Court is not convinced that additional time would have aided or changed his responses. Having been notified orally at the January 11, 1985, City

Council Special Meeting that a subsequent meeting would be held to determine whether he remained as Edgewater Police Chief and having received written notice and appropriate documentation on January 14, 1985, purposely for the January 15, 1985, Special City Council Meeting, plaintiff's failure to prepare his best response to the City Council was irresponsible and his protestations that he did not know the reason for that meeting are incredible. *See Kelly*, 764 F.2d at 1414.

The Court has examined the one-page recap delivered to plaintiff on January 15, 1985, and concludes that it merely itemizes the familiar documents that had been delivered to him. This document does not require extensive review and, therefore, it was not a legitimate cause for delaying the meeting. Plaintiff formerly had responded to many of the documents presented to him by written memorandum and orally before previous meetings of the City Council. Plaintiff again had his opportunity to respond to the City Council and he did not take advantage of it. *See Marshall*, 797 F.2d at 1560. To require more of the City Council would be an unwarranted intrusion on the governmental interest in expeditiously removing an unsatisfactory employee. *See Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495.

Furthermore, the Court notes that plaintiff has been represented by an attorney since the November 28, 1984, City Council Special Meeting, wherein the newly elected City Council reconsidered Resolution 84–R–56 and decided to return plaintiff to his original six-month probation. *Cf. Marshall*, 797 F.2d at 1557–58 (Plaintiff was represented by counsel during the posttermination proceedings only.). Neither plaintiff nor his counsel requested posttermination proceedings but, instead, filed suit. Plaintiff's own inaction does not constitute deprivation of procedural due process. *Marshall*, 797 F.2d at 1560; *Lewis v. Hillsborough Transit Authority*, 726 F.2d 664, 667 (11th Cir.1983), *cert. denied*, 469 U.S. 822, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Because of the repeated, documented viola-

tions of Edgewater procedures by plaintiff, the Court concludes that there was sufficient cause for terminating plaintiff for malfeasance, misfeasance and nonfeasance, and that his termination on January 15, 1985, was not pretextual. *See Marshall,* 797 F.2d at 1560–61; *Kelly,* 764 F.2d at 1413; *Hearn,* 688 F.2d at 1332–33. The Court further concludes that plaintiff received the procedural due process required by the Supreme Court in *Loudermill,* by the Eleventh Circuit, interpreting Florida law, and by Edgewater City Council Resolution 84–R–56.

A Florida court recently has decided a strikingly similar case, involving a city employee's property interest in his expectation of continued employment and the procedural process due upon his termination. *Housing Authority v. Robinson,* 464 So.2d 158 (Fla. 2d DCA), *pet. for rev. denied,* 475 So.2d 695 (Fla.1985). Following a six-month probation period, plaintiff had become a permanent Housing Authority employee, and he also served a promotional probation period. His supervisor, however, discovered that his work was substandard, including failure to complete annual rent examinations, to accurately review tenants' continued eligibility for public housing, and to inspect residential units. After his failure to correct these deficiencies, despite oral and written reprimands, plaintiff was placed on ninety-day, disciplinary probation "[i]n the best interest of the residents and the Housing Authority." *Robinson,* 464 So.2d at 160. During a subsequent job evaluation, plaintiff was terminated effective that day and given a one-sentence termination letter with two weeks pay in lieu of notice. Plaintiff pursued informal post-termination procedures, but declined hearing opportunities.

The *Robinson* court concluded that the procedural due process required under the Fourteenth Amendment and article I, section 9 of the Florida Constitution "are reasonable notice and a fair opportunity to be heard." *Id.* at 164. The court, however, acknowledged that "[t]hese requirements are flexible concepts to be discerned from the facts of each case." *Id.; see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Hadley v. Department of Administration,* 411 So.2d 184, 187 (Fla. 1982). The court did not find the one-sentence termination letter of plaintiff's supervisor insufficient notice of his unsatisfactory performance:

> The record demonstrates several instances over the nine-month period prior to October 31, 1979, where Glymph [plaintiff's supervisor] notified Robinson, either orally or in writing, of the deficiencies in his work performance. Glymph had even placed Robinson on disciplinary probation, at which time she presented him with a memorandum detailing the problems with his work and warning him of the possibility of dismissal. Therefore, we can only conclude that notwithstanding the conclusionary [sic] nature of the termination letter, Robinson was sufficiently apprised of the deficient areas of his work performance. For the same reasons, we reject Robinson's additional contention that any review of his termination would have suffered from the lack of specificity in the termination letter.

*Robinson,* 464 So.2d at 164.

Furthermore, the court found that plaintiff's failure to take advantage of hearing opportunities or to challenge his supervisor's criticism of his work prior to termination through available grievance procedures did not unconstitutionally deprive him of procedural due process. *Id.* The court also stated that plaintiff failed to prove denial of substantive due process because he did not prove "that he was terminated in an arbitrary and capricious manner and for an improper motive." *Id.* at 165; *see Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Accordingly, the *Robinson* court reversed the trial court's declaratory judgment rehiring and reinstating plaintiff with back pay because of deficient posttermination procedures. Because the *Robinson* court found that plaintiff's termination "comported with minimum constitutional due process standards," it did not discuss "the threshold issue" of whether plaintiff had "a prop-

erty interest in his continued employment." *Robinson,* 464 So.2d at 164.

The parallels of this case to *Robinson* are apparent and the factual distinctions make the result in this action more clear-cut. Both plaintiffs performed their duties in an unsatisfactory manner, received oral and written reprimands from the responsible governmental authority, were placed on probation, failed to improve despite criticism, and their job deficiencies posed a potential threat to the safety and wellbeing of their respective communities. There was, however, a stark difference in the pretermination notice and opportunity to respond. The *Robinson* plaintiff, expecting to review a job evaluation, was terminated effective the same day by a one-sentence letter with two weeks pay in lieu of notice and, seemingly, no pretermination opportunity for rebuttal. The *Robinson* Court found that the termination satisfied "minimum constitutional due process standards" and that he "was sufficiently apprised of the deficient areas of his work performance." *Id.* at 164. Plaintiff in this action confronted criticisms of the City Council on Friday, January 11, 1985, and was told that another meeting was forthcoming for the single purpose of acting upon his employment. Realizing the incidents of concern to the City Council, plaintiff had an entire week-end to prepare his response before receiving documentation on Monday, January 14, 1985, and another day to review the documents. Furthermore, he had the opportunity to respond to the City Council on January 15, 1985.

Interestingly, the *Robinson* court circumvented the "threshold issue" of whether that plaintiff had a property interest in his continued employment because it concluded that the termination met minimal due process standards. *Robinson* augments *Loudermill* and the Eleventh Circuit decisions. Even if the plaintiff in this action had a property interest in his continued employment, his termination satisfied due process requirements in a "for cause" termination. Furthermore, the Court is mindful of the great public concern in this case and the *Loudermill* recognition of the governmental interest in the prompt removal of an unsatisfactory employee. *Loudermill,* 470 U.S. 546, 105 S.Ct. at 1495.

The Court has concluded that the City Council was empowered to return plaintiff to probationary status by resolution and, therefore, that he was not deprived of procedural due process in his return to probation. Alternatively, if plaintiff did have a property interest in his continued employment as Edgewater Police Chief, then his termination comported with procedural requirements of notice and an opportunity to be heard of "for cause" termination. Additionally, plaintiff was not deprived of substantive due process because of the numerous documented causes for his termination. Posttermination procedures are not a consideration for the court since they were not and have not been requested.

██ The Court finds no merit to plaintiff's claims of injury to his career and reputation. Defendants obviously did not impose a stigma upon plaintiff because he acquired another job in law enforcement. *See Roth,* 408 U.S. at 573–75, 92 S.Ct. at 2707–08. Finally, the court concludes that defendants Baugh, Rotundo, Prater, Asting, and Inman, who composed the City Council that restored plaintiff's probation and terminated him and whom plaintiff has sued in their official capacity as well as individually, are DISMISSED based upon qualified immunity. Given the facts and the City Council resolutions under which they acted and further finding no due process violations, the Court concludes that the conduct of these defendants was reasonable and should not subject them to liability. *Davis v. Scherer,* 468 U.S. 183, 190, 195, 104 S.Ct. 3012, 3018, 3020, 82 L.Ed.2d 139 (1984); *see Casines v. Murchek,* 766 F.2d 1494, 1500–01 (11th Cir. 1985).

At the close of plaintiff's case, the Court granted defendants' Rule 41(b) motion for involuntary dismissal. Rule 41(b) of the Federal Rules of Civil Procedure states in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed

the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Based upon the facts, replete with cause for plaintiff's termination, and the applicable law, the Court determined that plaintiff had shown no right to relief and that there was no need for defendants to present their case. Thus, defendants' motion for involuntary dismissal appropriately was GRANTED as explained herein. The Clerk of Court is directed to enter judgment for defendant, City of Edgewater.

Defendants have filed a motion to tax costs and for attorney's fees, pursuant to 42 U.S.C. § 1988. Although defendants have prevailed, the Court concludes that plaintiff's claims were not vexatious, "frivolous, unreasonable, or groundless." *Christiansbug Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978). Therefore, defendants are not entitled to have costs and attorney's fees assessed against plaintiff and the respective motions are DENIED.